**Steven R. SCHNEIDER, Plaintiff,**

v.

**CHAS. SELIGMAN DISTRIBUTING COMPANY, INC., Defendant.**

**No. Civ.A. 96–208.**

United States District Court,
E.D. Kentucky,
Covington Division.

March 4, 1998.

---

evidence establishes that Windows95 does not disable Cache86.

**151.**  Plaintiffs' Response at 20.

Kenneth W. Scott, Florence, KY, for Plaintiff.

Gary L. Greenberg, Robert M. Lamb, Cincinnati, OH, for Defendant.

## OPINION & ORDER

BERTELSMAN, Chief Judge.

On February 27, 1998, an oral argument hearing on pending motions was held in this matter. Kenneth W. Scott represented plaintiff; Bob Lamb and Gary L. Greenberg represented defendant. The proceedings were recorded by official court reporter, Amy Blosser.

### Factual Background

In 1984, Plaintiff Steven Schneider ("Schneider") began working for Defendant Chas. Seligman Distributing, Co. ("Seligman"). Schneider worked as a beer truck delivery driver. (Deposition of Stephen R. Schneider at Vol. I p. 28–30). Schneider's job often required him to load or reload cases of beer onto his truck, to unstack the beer once at the delivery destination, to restack the beer onto a hand cart, and to unstack and restack the beer once inside the customer's facility. (Schneider dep., at Vol. II p. 17). According to Mr. Schneider, a case of canned beer weighed about 19 pounds, and a case of 40 ounce bottled beer weighed about 48 pounds. (*Id.* at p. 15). About sixty-five to seventy percent of the plaintiff's workload involved delivering canned beer. (*Id.*)

In late 1992, Schneider, who had a prior back injury, developed nagging back pain. On January 13, 1993, Schneider took leave from work in order to seek treatment for his injury. On the next day, he visited Dr. John D. Bever. (Schneider dep., at Vol. II at p. 37). Dr. Bever diagnosed strained back muscles, referred Schneider to a physical therapist, and gave Schneider a note to excuse him from work. Schneider remained off of work while he was treated with heat and stimulus therapy and sent to a six-week work hardening rehabilitation program.

When the work hardening program failed to improve Schneider's condition, Dr. Bever ordered further tests and ultimately diagnosed mild early degenerative disc changes at L4–5. (Schneider dep., exhibit # 8). Dr. Bever later determined that, pursuant to American Medical Association Guidelines, Schneider suffered from a permanent physical impairment of ten percent of the whole body. (Schneider dep., exhibit # 10). In April 1993, Dr. Bever instructed Schneider to not return to his position as a beer truck driver/delivery man and told Schneider that he should not lift more than twenty-five to thirty pounds. (Schneider dep., exhibit # 10).

During the summer of 1993, Schneider allegedly sent several resumes to Seligman.

(Schneider dep., at Vol II p. 58). In late June 1993, he sent a resume to Seligman and contacted Mark Hilliard, Seligman's Executive Vice–President. (*Id.* at p. 61). During the conversation, Schneider told Hilliard that he would be interested in another position. However, Hilliard informed him that he had just filled a salesman position and had no remaining positions available at that time. (*Id.* at p. 62).

On September 22, 1993, Mr. Hilliard promoted Dan Muenchen to route supervisor. Mr. Hilliard claims that he did not consider Schneider for this position because Schneider's poor disciplinary record disqualified him. (Hilliard Affidavit, at ¶ 5). Mr. Schneider argues that Mr. Muenchen had less sales experience than himself and that Muenchen had been employed by Seligman for a shorter period of time. (doc. # 22, at p. 6).

In the Fall of 1993, Hilliard sought to fill an opening for a merchandiser. (*Id.;* Hilliard Affidavit, at ¶ 6). A merchandiser stocks customer shelves, fills displays, rotates stock, and fills coolers. (*Id.* at ¶ 2). On October 15, 1993, Hilliard talked to Schneider via telephone, discussed the position and its responsibilities, and asked Schneider if he would be interested in applying. Schneider claims that he refused the position outright; however, Hilliard claims that Schneider said that he would contact him later but never followed up. In either case, Schneider did not accept the position, claiming that it required too much lifting and bending. (Schneider Affidavit, at ¶ 10).

On January 3, 1994, Hilliard promoted Andy Durstock from a merchandiser position to a sales position. (Hilliard Affidavit, at ¶ 7). Hilliard explains that Durstock performed well in his previous position and was well qualified for the job in sales. (*Id* .). Hilliard also explains that he did not consider Schneider for the position because Schneider refused consideration for the merchandiser position and because Schneider did not continue to express interest in employment with Seligman. (*Id.*). Schneider now argues that he should not have been required to continue requesting employment from Hilliard. (doc. # 22, at p. 7–8).

Although Schneider began driving for another employer in October 1993, he remained on the leave of absence from Seligman. He did not return to his prior position with Seligman. On January 12, 1994, Seligman terminated Schneider pursuant to a clause in the collective bargaining agreement that allows Seligman to terminate employees who fail to return from leaves of absence exceeding twelve months. (Hilliard Affidavit, at ¶ 8). Schneider did not file a grievance concerning his disability upon his termination or at any time prior to his termination. (Hilliard Affidavit, at ¶ 8).

During his leave of absence and after his termination, Schneider remained physically active. He did yard work and cut wood with a chain saw. (Schneider dep., at Vol II at p. 10–11). By the end of the Summer of 1993, Schneider's condition improved, and he was able to pursue normal, daily activity so long as it did not require repetitive lifting. (Schneider dep., at Vol II at p. 46–8). Since his injury, he has done ceramic tile work on his brother's house, for eight hours a day for a week, with bending and stooping. (Schneider dep., at Vol I at p. 83–8). He has remodeled his porch, built a stone wall, and has done decorative landscaping. (Schneider dep., at Vol II at p. 11).

During his leave of absence and after his termination, Schneider actively pursued employment outside Seligman. Prior to his injury, Schneider worked part-time as a real estate agent. After his injury, he increased his real estate activity. (Schneider dep., at Vol I at p. 38–45). In October 1993, Schneider began hauling auto parts in a tractor-trailer for an independent contractor. He drove two trips a day, three to four times a week, averaging five to eight hours a day. (*Id.* at 50–52). In March 1994, he accepted an over-the-road trucking job from another employer that required him to pass a physical examination. (*Id.* at 56–7). From that time until the present, he has held a variety of trucking jobs for a variety of employers. (*Id.* at 57–73). In fact, he is currently employed as a driver. (*Id.* at 79). In addition to driving, his current job requires that he load and unload equipment onto the trucks with chains and binders. (*Id.* 78–9).

Plaintiff was evaluated as being 10% functionally disabled under the AMA guidelines

by his treating physician. This is based on the fact that he can function well unless he engages in repetitive heavy lifting. His weight limitation is twenty-five to thirty pounds. (Schneider dep., exhibit # 10).

## Analysis

The Americans with Disabilities Act ("ADA") prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1995). The ADA places on covered employers the affirmative duty to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship...." § 12112(b)(5)(A).

■ In the instant case, Schneider relies exclusively on his theory that Seligman discriminated against him by failing to offer him a job that would accommodate his alleged disability. To prove discrimination, an employee must show: (1) that he is disabled; (2) that he is qualified for the job with or without reasonable accommodation; and (3) that he was denied a reasonable accommodation. *See Penny v. United Parcel Service,* 128 F.3d 408, 414 (6th Cir.1997) (citing *Roush v. Weastec. Inc.,* 96 F.3d 840, 843 (6th Cir.1996)).

■ As noted above, the first step in the analysis requires a determination that the individual has a disability covered by the ADA. *See* 42 U.S.C. § 12112(a) (1995). The ADA defines the term "disability" broadly to include:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

*See* 42 U.S.C. § 12102(2) (1995); *Penny,* 128 F.3d at 414. Thus, under the statute, the first inquiry in the disability determination is whether Schneider has a physical impairment that substantially limits one or more of his major life activities.

■ The Equal Employment Opportunity Commission ("EEOC") has defined "major life activities" to include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, breathing and working. *See* 29 C.F.R. § 1630.2(i) (1997). The EEOC has also provided interpretive guidance explaining that the above list "is not exhaustive" and that "other major life activities include, but are not limited to, sitting, standing, lifting, [and] reaching." 29 C.F.R. pt. 1630 app. at 350 (1997). Additionally, the EEOC's regulations define the phrase "substantially limits" as follows:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1) (1997). In deciding whether an individual is substantially limited in a major life activity, courts should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact, of the impairment. *See Penny v. United Parcel Service,* 128 F.3d 408, 414 (6th Cir.1997) (citing 29 C.F.R. § 1630.2(j)(2)).

With respect to the major life activity of working, "[t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1997). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1997). The Sixth Circuit has added that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *McKay v. Toyota Motor Manufacturing,* 110

F.3d 369, 373 (6th Cir.1997) (quoting *Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995)).

In *McKay v. Toyota Motor Manufacturing,* 110 F.3d 369 (6th Cir.1997), the Sixth Circuit addressed disability discrimination in the context of an alleged substantial limitation in the "major life activity" of working. The *McKay* case rested on facts similar to those presented by Schneider. *See McKay,* 110 F.3d at 370–371. The plaintiff in that case was diagnosed with carpal tunnel syndrome and muscle inflammation. Her doctor placed physical restrictions on her, including a lifting restriction of a maximum of twenty pounds, a restriction on the use of vibrating tools, and a restriction on repetitive use of her right hand. Eventually, she was terminated for excessive absences. *See id.* at 371. The Sixth Circuit reviewed the facts and concluded that the plaintiff was not disabled. *See id.* at 373. Specifically, the court held that "[i]n light of the regulatory framework of the ADA, we hold that the physical restrictions caused by plaintiff's disability do not significantly restrict her ability to perform the class of jobs at issue, manufacturing jobs; at best, her evidence supports a conclusion that her impairment disqualifies her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds." *Id.* According to the court, McKay's limited impairment did not significantly restrict her ability to perform a broad range of jobs in various classes. *See id.*

Like the plaintiff in *McKay,* Schneider's impairment does not restrict him from performing a broad range of jobs in various classes. *See id.* In fact, Schneider's impairment appears to be even less restrictive than the plaintiffs in either *McKay* or *Penny. See id.; Penny v. United Parcel Service,* 128 F.3d 408 (6th Cir.1997) (finding no disability in the case of a plaintiff who suffered a permanent impairment of the whole body of twenty percent). Schneider is permitted to lift up to thirty pounds and suffers from a permanent impairment of the whole body of only ten percent. (Schneider dep., exhibit # 10). Schneider remained physically active during his leave of absence, doing yard work and cutting wood with a chain saw. (Schneider dep., at Vol II at p. 10–11).

Following his injury, Schneider has engaged in physically demanding labor, including tile work, porch remodeling, and decorative landscaping. (Schneider dep., at Vol II at pp. 8, 11). Additionally, Schneider has held a variety of trucking jobs. (Schneider dep., at Vol I at p. 50–79). Schneider's impairment appears to disqualify him from only the narrow range of jobs that require him to physically load and unload items weighing in excess of twenty-five to thirty pounds. *See McKay,* 110 F.3d at 373. Accordingly, Schneider's impairment is not a disability under the ADA.

Therefore, the court having heard counsel and being advised,

**IT IS ORDERED** as follows:

1. That Defendant's motion for summary judgment (**Doc. # 15**) is hereby **granted** pursuant to the reasoning of the Sixth Circuit in *Penny v. United Parcel Service,* 128 F.3d 408, 414–418 (6th Cir.1997), and *McKay v. Toyota Motor Manufacturing,* 110 F.3d 369, 371–374 (6th Cir.1997);

2. That Defendant's motion to strike evidence (**Doc. # 24**) is hereby **denied as moot;** and

3. That a separate Judgment shall enter concurrently herewith.

### *JUDGMENT*

Pursuant to the Opinion & Order of this court entered concurrently herewith, the court being advised,

**IT IS ORDERED AND ADJUDGED** that judgment is hereby entered for the defendant in this matter; that this matter be, and it is, hereby **dismissed,** with prejudice, at the cost of the plaintiff herein.