HOWARD BAER, INC.,
et al., Appellants,

v.

Herbert D. SCHAVE, Appellee.

No. 2001–SC–0740–DG.

Supreme Court of Kentucky.

Dec. 18, 2003.

Rehearing Denied March 18, 2004.

---

John T. Ballantine, Walter L. Sales, Thomas M. Williams, Ogden Newell & Welch, Edward J. Smith, Louisville, Stephen C. Douse, King and Ballow, Nashville, TN, Counsel for Appellants.

Linda B. Sullivan, William C. Jacobs, Lexington, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

This Court granted discretionary review to consider what proof is necessary to establish that a medical restriction on heavy lifting is a "disability" for purposes of the Kentucky Civil Rights Act.[1] To decide this issue, we must consider whether being disqualified from performance of a single, task-specific job qualifies an individual as disabled under the Act. The United States Supreme Court recently considered this question in two seminal disability discrimination cases, *Toyota v. Williams*[2] and *Sutton v. United Air Lines*,[3] and we deem it appropriate to follow federal precedent.[4]

Howard Baer, Inc. is a trucking company that delivers bread and milk to Kroger grocery stores. Baer employs more than 350 truck drivers and has eight terminals across the nation. Herbert D. Schave was first employed as a truck driver with Baer in 1980, and in 1987 he began a "milk peddle" run from Baer's Winchester, Kentucky, terminal. To "peddle milk," a driver picks up a loaded trailer at a milk distribution point and delivers the milk to Kroger stores on a designated route.

In April 1993, Schave fell off his truck in the terminal yard and injured his shoulder. Schave was treated by his family physician and continued to work until October 1993. He was then referred to an orthopedist, Dr. Frank Burke, who diagnosed a torn rotator cuff and operated on the shoulder in January 1994. The shoulder was repaired and rehabilitated, and in April 1994, Schave passed a physical examination pursuant to federal motor carrier safety regulations. The examination allowed him to renew his commercial driver's license and qualified him to continue driving a truck. In May 1994, Dr. Burke cleared Schave to return to work, with the restriction that he avoid "repetitive overhead positioning of the arm, crawling, [and] lifting greater than 40 pounds except occasionally." Dr. Burke concluded, "As long as the patient is able to protect his shoulder under the circumstances described here, this patient could return to work with the job description of a truck driver."

---

**1.** KRS 344.010 *et seq.*

**2.** 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

**3.** 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

**4.** *See infra* footnote 5.

Schave gave Dr. Burke's return-to-work authorization to Pete Ingram, manager of Baer in Winchester. Ingram told Schave that he would have to discuss the matter with Larry Monroe, Baer's safety director. Monroe told Schave that he had to be "100%," i.e., to have no medical restrictions in order to return to work. Schave's name did not appear on the annual bid list for routes at the Winchester terminal in June 1994, and Schave was never allowed to return to work at Baer. Subsequently, he settled a workers' compensation claim against Baer, and in December 1994 he began work as a truck driver for Ryder Transportation Services.

In September 1997, Schave filed suit against Baer in the Clark Circuit Court, alleging disability discrimination in violation of KRS 344.040(1), and retaliation for having filed a workers' compensation claim. On the disability discrimination claim, the jury returned a verdict for Schave for $350,000 for lost earnings, $50,000 for humiliation and emotional distress, and $100,000 in punitive damages. The jury found for Baer on the retaliation claim. The Court of Appeals affirmed on the issues presented here.

The Kentucky Civil Rights Act was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith.[5] Under KRS 344.010(4), disability is defined as

(a) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment.

To be considered disabled under the Act, an individual "must initially prove that he or she has a physical or mental impairment."[6] Yet having an impairment does not alone make one disabled for purposes of the Act. An individual claimant must also prove that the impairment "limits a major life activity," and this limitation must be "substantial."[7] Major life activities include, among other things, walking, seeing, hearing, performing manual tasks,[8] caring for oneself, speaking, breathing, learning, and working.[9] Baer concedes that Schave's torn rotator cuff and consequent lifting restriction constitute a physical impairment. Baer contends, however, that Schave is not substantially limited in performing any major life activity, and that he is therefore not "disabled" within the meaning of the Act.

The United States Supreme Court recently considered this issue in *Toyota v. Williams*,[10] stating that the relevant question was "what a plaintiff must demonstrate to establish a substantial limitation in the specific major life activity of performing manual tasks."[11] The Court, quoting EEOC regulations, stated that substantially limited means

---

5. *Bank One, Ky., N.A., v. Murphy*, Ky., 52 S.W.3d 540 (2001); *Lococo v. Barger*, 958 F.Supp. 290 (E.D.Ky.1997); *Mills v. Gibson Greetings, Inc.*, 872 F.Supp. 366 (E.D.Ky. 1994); *Harker v. Federal Land Bank*, Ky., 679 S.W.2d 226 (1984)(*citing Kentucky Comm'n on Human Rights v. Commonwealth of Kentucky, Dept. of Justice*, Ky.App., 586 S.W.2d 270 (1979)).

6. *Toyota Motor Mfg. Ky., Inc., v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002).

7. *Id.*

8. *Id.* (*citing* 45 CFR § 84.3(j)(2)(ii)(2001)).

9. *Sutton* at 480, 119 S.Ct. 2139.

10. 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615.

11. *Id.* at 196, 122 S.Ct. 681.

"[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity."[12]

■■ The following factors are to be considered in determining whether an individual is substantially limited in a major life activity:

"[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment."[13]

The Court further held that the "central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [a] particular job."[14] Of course, employment is within the ambit of daily life activities.[15]

■ The evidence presented at trial showed that Schave did not meet the requirements associated with his work as a milk-peddle driver, but that he was not substantially limited in his major life activities. Schave's supervisor at Ryder testified that he performs all the responsibilities related to driving tractor trailers, and that his physical condition has not kept him from doing any job she has asked him to do. Dr. Burke testified that Schave's shoulder allows him to perform most of the tasks necessary to the job at Baer except for frequent lifting of forty or more pounds over his head, stating, "Forty pounds should be a range that would allow a person to do most anything except specifically put forty pounds out at shoulder level and put it over you head." Upon cross-examination, Schave acknowledged that there were elements of the job at Baer that he could not do. He stated that he could not hook milk off the back of a truck because of the forty pound weight restriction, and that he could not pull 180 to 200 pounds.

■ From the foregoing it is clear that Schave is not unable to perform a "major life activity," including employment. He is merely unable to perform heavy lifting tasks associated with his employment at Baer.[16] An "impairment that

12. *Id.* (*quoting* 29 CFR § 1630.2(j)(2001)).

13. *Id.* (*quoting* 29 CFR 1630.2(j)(2)(i)-(iii)); *see also Schneider v. Chas. Seligman Distributing Co., Inc.,* 995 F.Supp. 756 (E.D.Ky.1998).

14. *Id.* at 692.

15. *Sutton* at 480, 119 S.Ct. 2139.

16. Many appellate courts have held that lifting restrictions less than Schave's do not constitute a substantial limitation on any major life activity. *See Colwell v. Suffolk County Police Dept.,* 158 F.3d 635, 644 (2nd Cir. 1998), *cert. denied,* 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999)(10–20 pound lifting restriction); *Gutridge v. Clure,* 153 F.3d 898, 901 (8th Cir.1998), *cert. denied sub nom,*

*Gutridge v. Midland Computer, Inc.,* 526 U.S. 1113, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999)(20–45 pound lifting restriction); *Snow v. Ridgeview Medical Center,* 128 F.3d 1201, 1207 (8th Cir.1997)(25 pound lifting restriction); *Thompson v. Holy Family Hospital,* 121 F.3d 537, 540 (9th Cir.1997)(25–100 pound lifting restriction); *Williams v. Channel Master Satellite Systems, Inc.,* 101 F.3d 346, 349 (4th Cir.1996), *cert. denied sub nom, Williams v. Avnet, Inc.,* 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997)(25 pound lifting restriction); *Ortiz-Molina v. MAI Del Caribe, Inc.,* 83 F.Supp.2d 271, 276–77 (D.P.R. 2000)(25 pound lifting restriction); *Piascyk v. City of New Haven,* 64 F.Supp.2d 19, 29 (D.Conn.1999)(15 pound lifting restriction); *Plumb v. Abbott Laboratories,* 60 F.Supp.2d

interferes with work related tasks ... does not necessarily rise to the level of a disability under the Act,"[17] and a restriction on lifting "heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life."[18] Therefore, we conclude that Schave has failed to meet the disability standard of the Act.

 Schave further contends that even if he is not actually disabled under KRS 344.010(4)(a), he is disabled for purposes of the Act pursuant to subsection (c) because he is "being regarded as" having an impairment. The "regarded as" standard was addressed in *Sutton v. United Air Lines, Inc.*[19] The United States Supreme Court considered this disability standard in the context of individuals who did not meet a vision requirement, and who were thereby refused positions as airline pilots with United Airlines. The Court rejected the notion that the vision standard for pilots meant that the airline regarded the plaintiffs as disabled, holding that employers were at liberty to establish reasonable job standards that disqualify applicants who could not meet those standards.

In so holding, the Court stated that to be "regarded as" disabled, a plaintiff must prove that:

(1) A covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or

(2) A covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have, or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.[20]

 An employer who regards an employee as disabled must "entertain misperceptions" resulting from " 'stereotypic assumptions not truly indicative of individual ability.' "[21] To succeed upon a regarded as disabled claim, plaintiff must "demonstrate that an employer thought he was disabled, [... and] that the employer thought that his disability would prevent him from performing a broad class of jobs."[22]

Although Baer concedes that Schave has a physical impairment, there is no evidence that Baer regarded the lifting restriction as having substantially limited Schave in major life activities. The evidence showed only that the company perceived Schave as not qualified to work as a truck driver for Baer because of the lifting restriction. There was no evidence from which a jury could make inferences about Baer's beliefs regarding the effect of the 40 pound restriction on tasks central to Schave's daily life.

642, 651–52 (E.D.Mich.1999)(10 pound lifting restriction); *Horth v. General Dynamics Land Systems, Inc.,* 960 F.Supp. 873, 878 (M.D.Pa. 1997)(20 pound lifting restriction).

17. *Mack v. Great Dane Trailers,* 308 F.3d 776, 780 (7th Cir.2002).

18. *Id.*

19. 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

20. *Id.* at 489, 119 S.Ct. 2139; *see also Henderson v. Ardco,* 247 F.3d 645 (6th Cir.Ky. 2001).

21. *Sutton* at 489, 119 S.Ct. 2139.

22. *Ross v. Campbell Soup Company,* 237 F.3d 701, 709 (6th Cir.2001).

For the foregoing reasons, the judgment of the Court of Appeals is reversed. This cause is remanded to the trial court with directions to enter judgment for the defendant.

COOPER, GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion in which KELLER, J., joins.

STUMBO, Justice Dissenting.

Respectfully, I must dissent. I believe that there was sufficient evidence for the jury to determine that Howard Baer, Inc. regarded Schave as having an impairment that substantially limited a major life activity.

In reviewing a judgment entered upon a jury verdict, this Court is limited to a determination of whether the trial court erred in refusing to grant a directed verdict motion. *Bierman v. Klapheke*, Ky., 967 S.W.2d 16, 18 (1998). On a motion for directed verdict, the trial judge is required to give the opposing party the benefit of all reasonable inferences and deductions to be drawn from the evidence. *Id.* A jury verdict should not be disturbed unless found to be "palpably or flagrantly against the evidence so as to indicate that it was reached as the result of passion or prejudice." *Id.* The trial judge's decision should not be disturbed upon appeal unless found to be clearly erroneous. *Id.*

Here, Schave presented evidence, particularly Baer's "100%" rule, that indicated Baer regarded Schave as having an impairment (inability to lift 40 lbs. over his head) that substantially limited his ability to perform one or more major life activities (lifting and working). Although Schave's impairment may have legitimately precluded him from performing certain aspects of the milk peddler job, Baer excluded him from any type of employment by removing his name from the entire annual bid list for all truck driving positions, including those that had differing physical requirements. There was also testimony presented that most other trucking companies utilize a similar "100%" policy for truck-driving jobs. Therefore, it would not have been flagrantly against the evidence for the jury to have found that Schave was substantially limited in his ability to perform an entire class of jobs, as *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), requires.

In addition, "[w]here the 100% rule is applied to mildly impaired persons to exclude them from a broad class of jobs, it may be treating them as disabled even if they are not, thereby qualifying them for protection under the ADA and parallel statutes. . . ." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir.2001) (reversing grant of summary judgment for employer with "100% rule," where employee was prohibited from all employment at a plant due to lifting restrictions). In *Henderson*, which was decided a few months prior to *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), the court found that the plaintiff had presented evidence that her employer had perceived that there was no job at all for her at the Ardco plant, and that such evidence "gives an indication of the employer's perception about her suitability for a class of relevantly similar employment." *Henderson, supra*, at 654. Likewise, the jury here could have reasonably inferred that Baer had perceived Schave unsuitable for any job in the trucking industry, as evidenced by its "100%" rule that excluded Schave from any type of employment at Baer.

The decision in *Williams, supra*, did not affect the Sixth Circuit's analysis. *Williams* dealt with an employee's sub-

stantial limitation in the major life activity of performing manual tasks. The Court specifically stated that it expressed no opinion on the employee's arguments that she had been "regarded as" disabled by being substantially limited in her ability to perform such major life activities as lifting or working. *Id.* at 192–193, 122 S.Ct. at 688–689. The Court did reiterate that when considering the major life activity of working, the employee must show their "inability to work in a 'broad range of jobs,' rather than a specific job." *Id.* at 200, 122 S.Ct. at 693 (quoting *Sutton, supra,* at 492, 119 S.Ct. at 2151). Here, a reasonable jury could have found that Schave was regarded as being unable to perform a broad range of jobs.

Accordingly, I feel that the jury had substantial evidence to conclude that Baer regarded Schave as disabled under the Kentucky Civil Rights Act and that decision should not be disturbed on appeal.

KELLER, J., joins this dissent.