Lucy Craig **STEILBERG**, Appellant,

v.

**C2 FACILITY SOLUTIONS, LLC and Dale A. Cain, Appellees.**

No. 2007–CA–001500–MR.

Court of Appeals of Kentucky.

Aug. 1, 2008.

Discretionary Review Denied by Supreme Court Feb. 11, 2009.

Glenn A. Cohen, Cynthia L. Effinger, Louisville, KY, for appellant.

Kenneth S. Handmaker, Brian C. Corneilson, Louisville, KY, for appellees.

Before COMBS, Chief Judge; KELLER, Judge; HENRY,[1] Senior Judge.

## OPINION

COMBS, Chief Judge.

Lucy Craig Steilberg appeals from a summary judgment and order of the Jefferson Circuit Court dismissing her claims against C2 Facility Solutions, LLC and Dale A. Cain, the President and Chief Executive Officer of the corporation. Steilberg's claims against C2 and Cain arise out of alleged violations of Kentucky's Civil Rights Act. Kentucky Revised Statutes (KRS) Chapter 344. The trial court concluded that Steilberg was not an employee of C2 and that, therefore, she could not invoke the Act to protect herself against unlawful discrimination. The court ruled that C2 and Cain were entitled to judgment as a matter of law. After our review of the oral and written arguments of counsel, we affirm the conclusion of the trial court that the charges of unlawful discrimination were not viable because Steilberg worked with the firm as an independent contractor rather than as an employee.

In November 2004, C2 was a recently established, subscription-based, software company offering an internet-assisted facility asset management and maintenance service. As of that date, the corporation had only a dozen clients. Management believed that the company could be stimulated to expand if an effective marketing plan were implemented. Cain was acquainted with Steilberg and was aware that she had experience both in marketing and in public relations. An interview was scheduled, and Steilberg met with Cain and other C2 employees over a two-day period in November 2004. In her deposition testimony, Steilberg indicated that she and Cain quickly identified a shared vision for the company's future. Cain offered her an opportunity to "join the group" because "we [C2] need marketing expertise." C2 offered to pay Steilberg $5,000.00 per month for her services, and she accepted. On December 1, 2004, Steilberg began working with C2 to define its target customers and to develop an array of branding ideas.

Steilberg alleges that within two weeks, Cain began to harass her with inappropriate and unwelcome sexual overtures. On December 17, 2004, Steilberg alleges that Cain made his final inappropriate sexual advance toward her. From that point on, Steilberg contends that Cain began to retaliate against her.

In March 2005, Steilberg made a complaint to the company's human resource department about Cain's sexual harassment and retaliatory behavior. Because she felt that his hostility against her was increasing, Steilberg began to perform more of her work away from C2's offices. C2 terminated its association with Steilberg in July 2005.

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

On October 7, 2005, Steilberg initiated this action against C2 and Cain. In her complaint, she alleged that Cain had sexually harassed her; had created a hostile work environment; and had retaliated against her after she refused to submit to his inappropriate demands. She sought recovery for economic and emotional damage along with attorneys' fees, costs, and expenses. In their answer, Cain and C2 denied Steilberg's substantive allegations. Cain and C2 explained that the association with Steilberg had been terminated because the company could no longer afford to pay for her unproductive services. In addition, they denied that Steilberg was entitled to pursue a civil rights action against them since she had never been an employee of the company.

Following a period of extensive discovery, C2 and Cain filed a joint motion for summary judgment in May 2007. In their memorandum in support of their motion, C2 and Cain argued that they were entitled to judgment as a matter of law because Steilberg had been affiliated with C2 only as an independent contractor and not as an employee entitled to the protection of Kentucky's Civil Rights Act. According to C2 and Cain, Steilberg had been paid in accordance with monthly invoices that she submitted to the company; the company did not permit her to participate in the employee benefits package offered to the company's employees; the company did not withhold any income taxes, Medicare, or Social Security payments from her compensation; the company reported her compensation to the Internal Revenue Service on a Form 1099; and Steilberg had consistently held herself out to others as an independent contractor.

According to C2 and Cain, all of these facts defined the nature of the relationship that existed between Steilberg and C2, indicating conclusively that Steilberg was not an "employee" entitled to the protection offered by the provisions of Kentucky's Civil Rights Act. In addition, C2 and Cain argued that Steilberg's association with the company was severed solely because she was never able to become proficient in demonstrating the company's software service or to understand its technical aspects. The company never realized a benefit from her services.

After Steilberg's memorandum in response was filed, the Jefferson Circuit Court determined that the provisions of the Kentucky Civil Rights Act did not apply to protect independent contractors from discrimination. Since Steilberg had not been an employee of C2, the court held that C2 and Cain were entitled to judgment as a matter of law. Judgment in their favor was entered on July 26, 2007, and this appeal followed.

On appeal, Steilberg argues that the Jefferson Circuit Court erred by summarily dismissing her claims of unlawful discrimination against Cain and C2. We disagree.

Kentucky Rules of Civil Procedure (CR) 56.03 provides that a summary judgment should be granted if the pleadings and all relevant discovery indicate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). The trial court must grant a motion for summary judgment only if it appears that it would be **impossible** for the respondent to produce evidence indicating the possibility of a favorable judgment against the movant. *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985). Our standard of review on appeal focuses on whether the trial court correctly concluded that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App. 1996).

The parties agree that the Kentucky Civil Rights Act protects an *employee* against unlawful discrimination. They also agree that the correct resolution of the motion for summary judgment turns upon whether Steilberg can be regarded as C2's employee. C2 and Cain argue that an independent contractor is not an "employee" as that term is used in the Act and that, therefore, the Act does not apply. Steilberg contends that the Act protects all individuals and that the term *employee* ought to be construed so broadly as to include independent contractors. In the alternative, Steilberg contends that she was not associated with C2 merely as an independent contractor but that she was indeed working for the firm as an employee.

■ We have already noted that the Act's definition of *employee* offers little guidance in construing its meaning. *Kearney v. City of Simpsonville*, 209 S.W.3d 483 (Ky.App.2006). Under the Act, an employee is defined simply as "an individual employed by an employer[.]" KRS 344.030(5). However, because the Act is modeled after federal law, we may seek recourse to the federal courts' construction of the term under similar circumstances. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589 (Ky.2003). Since the language of the Kentucky Civil Rights Act generally tracks the language of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f), provisions of the Act "should be interpreted consonant with federal interpretation." *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 820 (Ky.1992).

The specific provisions of the federal legislation also fail to offer a clear meaning since Title VII for the most part defines *employee* as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The federal courts have repeatedly considered the issue now before us. They have held that independent contractors are **not** to be treated as employees under the federal provisions and that the protections provided by the federal statute **do not extend** to independent contractors. *See Lemmings v. FedEx Ground Package System, Inc.*, 492 F.Supp.2d 880 (W.D.Tenn.2007); *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487 (7th Cir.1996); *Wortham v. American Family Ins. Group*, 385 F.3d 1139 (8th Cir.2004); *Lambertsen v. Utah Dept. of Corrections*, 79 F.3d 1024 (10th Cir.1996).

In *Shah v. Deaconess Hosp.*, 355 F.3d 496 (6th Cir.2004), the federal court considered whether a physician who had been denied hospital privileges was entitled to the protections provided by Ohio state law and federal employment discrimination laws. The court noted the generally accepted rule that federal employment discrimination statutes protect employees— but not independent contractors. Next, the court concluded that it would apply the common law agency test to determine whether the disputed party working for the defendant was an independent contractor or an employee. Referring to an analysis discussed in *Simpson v. Ernst & Young*, 100 F.3d 436 (6th Cir.1996), the court reasoned that the common law approach required the consideration of numerous factors, including the following:

> the hiring party's right to control the manner and means by which the product is accomplished; the skill required by the hired party; the duration of the relationship between the parties; the hiring party's right to assign additional projects; the hired party's discretion over when and how to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the hiring party's regular business; the hired party's em-

ployee benefits; and tax treatment of the hired party's compensation.

100 F.3d at 443 citing *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992).

■ This test requires a careful case-by-case consideration of the facts. From our review of the record, there does not appear to be any genuine issue of material fact that would prevent a determination of the issue as a matter of law. The record supports the conclusion of the court that Steilberg's association with C2 was that of an independent contractor rather than that of an employee pursuant to the common law criteria.

Steilberg presented herself to C2 as a well-connected specialist in marketing—not as an expert in computer software development, C2's regular business. She billed the firm monthly with an invoice for services rendered; she paid self-employment tax on her earnings. She did not accumulate annual leave time, nor did she participate in the insurance and retirement benefits offered by the firm to its employees.

It does not appear from the record that C2 controlled the manner and means by which Steilberg developed and implemented her marketing strategies. She used her own vehicle and cell phone, and she was not reimbursed for any costs. C2 did provide Steilberg with business cards that indicated that she was one of the firm's vice-presidents. However, the cards were a product of Steilberg's own design and were used merely to show or to advertise her formal affiliation with the firm. Steilberg had access to shared office space in the firm's suite as a matter of convenience, and she attended committee and sales meetings at her own request rather than by mandate of the company. She was provided the use of a company computer only because the hardware requirements of the software demanded a sophisticated laptop.

The firm eventually began requesting that Steilberg show them some quantifiable results of her efforts. However, this inquiry came near the end of their association. Regardless of her status as an employee or independent contractor, such a progress report would have been foreseeable and reasonable. Steilberg controlled her own work hours, and her schedule was consistent with that of an outside consultant rather than an employee. In short, nothing in the record indicates that C2 in any fashion controlled the manner and means of Steilberg's performance as a marketing specialist.

Steilberg took time to familiarize herself with C2's product and its broader market goals, but it does not appear that C2 made an effort to train her in its underlying business. Instead, Steilberg came to the firm ready to put her education, experience, and contacts to work. There is no evidence to indicate that C2 intended that Steilberg's marketing expertise would be added as a permanent part of the firm's objectives or that her work was—or was ever intended—to become indefinitely ongoing or integral to the firm's business. Nor was C2 her sole area of concentration. Steilberg was involved with the launch of another business enterprise during the course of her representation of C2.

The trial court did not err in discounting evidence that C2 began to monitor her performance and to measure the value of her work at a point midway through their professional association. It was clear that by March 2005, tension had mounted at C2, and the firm had begun to reassess its association with Steilberg. The changes in the climate of her working relationship with the firm might have been attributable to numerous factors regardless of any

characterization of her status either as an employee or as an independent contractor. The firm's decision to undertake an internal investigation of Steilberg's complaint is essentially neutral as to whether she was working as an employee or independent contractor.

Steilberg failed to present any genuine issue of material fact that would preclude a determination of the legal issue before the trial court. The record indicates that the trial court correctly concluded that the application of the common law agency test weighed heavily in favor of defining Steilberg's association with C2 as that of an independent contractor rather than an employee. We are persuaded that it would be impossible for the appellant to produce evidence warranting a favorable judgment against C2 and/or Dale Cain under these circumstances. Therefore, we hold that the trial court correctly ruled that C2 and Cain were entitled to judgment as a matter of law.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.