NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0193n.06

No. 10-5013

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 29, 2011
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| DENNIS BREEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| INFILTRATOR SYSTEMS, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |

Before: BATCHELDER, Chief Judge; CLAY and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Infiltrator Systems discharged Dennis Breen, who has Hepatitis

C, from his position as a shipping manager. Breen sued Infiltrator, alleging that the company's

actions violated a Kentucky civil rights statute. The district court concluded that Breen's claim fails

as a matter of law, and so do we.

I.

Breen began working as an accountant for Infiltrator in the 1990s. In 1997, the company

promoted him to manager.

In April 2000, after testing positive for Hepatitis C, Breen saw a doctor about his diagnosis.

The doctor recommended Breen have a liver biopsy, abstain from drinking alcohol and consider

possible treatments for his condition. Breen did not follow the advice, and he did not immediately tell Infiltrator about the diagnosis.

In January 2005, Breen's supervisor, Anthony Whisman, gave him a performance review. Whisman faulted Breen for being "negative at times with Customer Service," Appx. 88, stated that Breen "need[ed] to work on personal skills," and added that he "need[ed] improvement with Customer Service," Appx. 89. Whisman recommended that Breen "spend more time . . . with his employees," Appx. 88, "accept change from other managers," Appx. 89, and try to "motivat[e] his people," Appx. 90. Whisman summarized the report in this way:

(1) Improve Relationship with Customer service
(2) Develop his Relationship with his employees
(3) Do a better job Rotating Inventory [and]
(4) Attitude at times is a problem[.]

Appx. 92. (The reference to rotating inventory refers to Infiltrator's "First In First Out" policy of shipping out inventory in the order it arrives.)

In May 2005, Breen told Whisman that he had Hepatitis C and was thinking about starting treatment. After this conversation, Whisman noticed Breen had lost weight and had sores on his arms. Whisman asked Breen if he was going to the doctor and if he needed time off from work, an offer Breen declined.

Things then began to change at work, Breen maintains. His co-workers and employees talked about his Hepatitis C and asked him about it because, he says, they were "curio[us]." Appx. 26.

Some co-workers thought that Hepatitis C is similar to AIDS, and one co-worker, Bobby Thompson, referred to Breen as a "f----t." Appx. 24–25. Neither Whisman nor any other supervisor made such comments.

In June 2005, an Infiltrator employee complained to a manager that Breen used the "n word" in the workplace. The company investigated the allegation, and several other employees reported that Breen used racial slurs at work. In July 2005, Whisman spoke with Breen and relayed his concerns about the inappropriate racial comments.

In September 2005, Whisman talked with Breen about his department's failure to follow the company's First In First Out policy. On November 8, 2005, the quality control department uncovered another instance in which Breen shipped the most recent product instead of shipping inventory that had arrived earlier. When asked, Breen had no explanation for failing to follow the company's policy.

Storms were brewing on other fronts as well. In September 2005, Whisman gave Breen a written reprimand for refusing to work with Infiltrator's customer service department. In November 2005, Mary Pepe, a member of the human resources department, contacted Whisman about concerns she had regarding Breen. Breen had "mouthed off" to customer service representatives in front of a major client, saying that "corporate doesn't care about safety." Appx. 114. Breen also had not cooperated with the company's shipping department (or processed their orders), had referred to them

as "stupid, no good," and had told one employee that he was a "cancer." *Id.* Pepe also noticed that "the shipping teams seemed afraid to talk to or be near" Breen. *Id.*

On November 16, 2005, Breen met with Whisman and Carolyn Wiley, a human resources manager. What happened at the meeting is disputed, but at this stage of the litigation we take Breen's allegations, at least those supported by evidence, as true. *See Bryson v. Regis Corp.*, 498 F.3d 561, 569 (6th Cir. 2007). Breen maintains that Infiltrator suggested he take medical leave to begin treatment for Hepatitis C but did not tell him he was discharged. Breen says he took the leave, anticipating it would last a month to a month and a half. (He did not, however, return the required medical forms for leave under the Family Medical Leave Act (FMLA), Pub. L. No. 103-3, Title I, 107 Stat. 6 (1993), until they were more than a month late.)

In January 2006, after beginning treatment for Hepatitis C, Breen contacted Infiltrator about returning to work. His wife, Donna, also contacted the company to see when Breen could start work again. Infiltrator did not respond, until the end of January, when Whisman allegedly told Breen not to come in until he heard from the company. Breen e-mailed Infiltrator's human resources department at the end of February about his health care coverage, and after Breen threatened legal action, Infiltrator arranged a meeting with Breen, Whisman, Wiley and another employee. At the March 9 meeting, Infiltrator told Breen that the company had discharged him in November.

Breen sued Infiltrator in state court for violations of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq*. Infiltrator removed the case to federal court on diversity grounds, and after discovery the court granted Infiltrator's motion for summary judgment.

II.

The parties agree that the disability discrimination provisions of the Kentucky Civil Rights Act parallel the requirements of the Americans with Disabilities Act (ADA), Pub. L. No. 101-336, 104 Stat. 331 (1990). *See Bryson*, 498 F.3d at 574; *Howard Baer, Inc. v. Schave*, 127 S.W.2d 589, 592 & n.5 (Ky. 2003). We give a fresh look to the district court's summary judgment decision, and we draw all reasonable factual inferences in favor of Breen, the opponent of the motion. *Bryson*, 498 F.3d at 569.

In the absence of direct evidence of discrimination, the burden-shifting framework of *McDonnell Douglas* governs a claim of disability discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185–86 (6th Cir. 1996); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The plaintiff must first establish a threshold case of discrimination. *Monette*, 90 F.3d at 1186. If he satisfies that obligation, the burden shifts to the employer to offer a "legitimate, nondiscriminatory" reason for its action. *Id.* at 1179, 1186. If the employer does so, the burden shifts to the plaintiff to establish that the employer's proffered reason is merely a pretext for unlawful discrimination. *Id.* at 1186–87.

As to the first requirement, Breen bears the burden of showing that he is a person with a disability. *Id.* at 1185–86. Breen elected to do this by arguing that Infiltrator regarded him as disabled, requiring him to prove that:

> (1) [Infiltrator] mistakenly believe[d] that [he] ha[d] a physical impairment that substantially limit[ed] one or more major life activities, or
> (2) [Infiltrator] mistakenly believe[d] that an actual, non-limiting impairment substantially limit[ed] one or more major life activities.

*Baer*, 127 S.W.3d at 594; *see* K.R.S. § 344.010(4); 42 U.S.C. § 12102(1) (2006). (Although Congress recently expanded the definition of "regarded as disabled," *see* ADA Amendments Act of 2008, Pub. L. No. 110-325, § 4, 122 Stat 3553, that amendment has yet to be incorporated into the Kentucky statute, *see* K.R.S. § 344.010(4), so the pre-2008 ADA standards apply to Breen's claim. *See Milholland v. Sumner Cnty. Bd. of Educ.*, 569 F.3d 562, 567 (6th Cir. 2007); *Adams v. Louisville-Jefferson Cnty. Metro Gov't*, No. 2008-CA-000754-MR, 2009 WL 637294, at *7 (Ky. Ct. App. Mar. 13, 2009); *cf.* ADA Amendments Act of 2008, § 8 (amendments effective in 2009).)

Breen has not met these requirements. Of particular damage to his claim, he has not specified any major life activity that Infiltrator mistakenly believed he could not handle. Breen admitted that his co-workers' questions about his disease reflected their "curiosity," not misconceptions about his ability to perform his work. Appx. 26. The negative comments his co-workers did make—that Hepatitis C is like AIDS, that he was gay—"no matter how uninformed, do not suggest" that Breen's co-workers thought him substantially limited in a major life activity. *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 506, 508 (5th Cir. 2003).

Of equal importance, Breen acknowledged that Whisman and other members of Infiltrator's management never made any negative comments about Hepatitis C. Because Breen claims that management regarded him as disabled, it is that perspective—the perspective of those who discharged him—that matters. *See, e.g.*, *Risch v. Royal Oak Police Dept.*, 581 F.3d 383, 393 (6th Cir. 2009)*;* *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 662–63 (6th Cir. 1999). Critically, however, the negative reviews from his supervisor (Whisman) began before Breen told Whisman about his diagnosis.

Breen's featured evidence also does not show what he suggests it does. That Infiltrator became aware that Breen had Hepatitis C does not "alone . . . rise to the level of an awareness or belief that [Breen] was" substantially limited in a major life activity. *Adams*, 2009 WL 637294, at *7; *see Ross v. Campbell Soup Co.*, 237 F.3d 701, 709 (6th Cir. 2001). Nor does the fact that the company offered Breen FMLA leave (or any other kind of sick leave) for his medical issues change things. *See Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 901, 906–07 (8th Cir. 2010); *Ramey v. St. Claire Med. Ctr.*, No. 2003-CA-000476-MR, 2004 WL 2481393, at *1–2, 4 (Ky. Ct. App. Nov. 5, 2004). Employers do not violate the ADA by attempting to comply with the FMLA or by accommodating a sick employee. More to the point, Breen "failed to show how [this] . . . behavior[] translated into [Infiltrator] regarding him as substantially limited" in a major life activity. *Kirkeberg*, 619 F.3d at 906; *see Hallahan v. Courier-Journal*, 138 S.W.3d 699, 710–13 (Ky. Ct. App. 2004). Although Breen maintains that Infiltrator considered him unable to perform his own job, he does not

claim, nor does the evidence show, that the company viewed him as unable to perform a broad range of jobs, and that is where his claim fails. *See Ross*, 237 F.3d at 709.

Even if Breen could overcome these obstacles, he faces another problem: He did not discredit Infiltrator's reasons for discharging him. The company claims it let Breen go due to his performance at work, and Breen has not shown that this explanation was a cover for discrimination—that it (1) has no basis in fact, (2) did not actually motivate the company's decision or (3) does not suffice to motivate that decision. *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008); *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 493, 497 (Ky. 2005).

*The company based its decision on uncontradicted facts.* Breen does not deny signing Whisman's January 2005 negative performance review, which faulted him for dysfunctional relationships with the customer service department and his employees and for failing to follow the company's inventory shipment policy. He concedes he had "issues" with the customer service department. He acknowledges that these issues began before he told anyone at Infiltrator about his Hepatitis C. And he does not deny that there were problems during customer service representatives' visit in November 2005, when he insulted the representatives in front of a major client.

Nor does Breen dispute Infiltrator's claim that he did not consistently follow the company's First In First Out policy. He does not dispute that Whisman spoke with him about his employees' failure to rotate the product correctly, or that one of the goals in his performance review was to rotate

the product correctly. Breen also does not dispute that his group shipped product contrary to the policy in early November.

*Breen has not provided a reason to reject the company's explanation that these facts motivated the decision to discharge him.* Even before Breen informed Infiltrator of his condition, the company identified Breen's relationship with the customer service department, Breen's adherence to the company's First In First Out policy and Breen's attitude as areas that needed improvement. These issues were important enough for the company to mention in his annual review as areas of improvement for the upcoming year. Breen identifies no other employee with a similar disciplinary history whom the company has not discharged. Nothing in the record, in short, suggests the company discharged Breen because of, rather than in spite of, his Hepatitis C. *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

*The company's reasons sufficed to motivate its decision.* Breen's failure to follow company policy, his insubordination in front of a major client and his continuing hostile relationship with the customer service department "gave the company ample reason" to discharge him. *Sherrills v. Beison*, 242 F. App'x 332, 337 (6th Cir. 2007). Breen responds that at least two factual disputes remain: (1) when exactly Infiltrator told him he was fired (whether in November or March) and (2) whether he used racial slurs in the workplace. The first issue is not material to Breen's case. A quibble over when Infiltrator fired Breen does not alter the reality that Breen has not produced any evidence that the company regarded him as disabled and does not contradict the many legitimate reasons offered by the company for discharging him.

As to the second issue, Breen provided an affidavit from an employee who says he never heard Breen use a racial slur. That employee, however, was not among those who complained to Infiltrator about Breen's language at work, and Breen does not dispute that Infiltrator received multiple reports from other employees about his racially inappropriate language. That is enough for Infiltrator to prevail. "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009). Even if the employees fabricated these allegations, that does not demonstrate that they, or anyone else at Infiltrator, regarded Breen as disabled. And Breen's other performance issues—his relationship with customer service, his behavior in front of a major client and his failure to follow company policy—stand undiminished as legitimate grounds for the company's decision.

Breen persists that the case should proceed to trial on a mixed-motive theory of discrimination. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989). But there is no mixed-motive theory of recovery available to plaintiffs under the Kentucky Civil Rights Act. *See Macy v. Hopkins Cnty. Sch. Bd.*, 484 F.3d 357, 363–64 & n.2 (6th Cir. 2007); *Monette*, 90 F.3d at 1178. To withstand summary judgment on this theory, at any rate, Breen still would need to provide some evidence that illegitimate considerations contributed to the discharge, *see Hopkins*, 490 U.S. at 241, and he simply has not done so.

III.

For these reasons, we affirm.