NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0906n.06

Nos. 11-5070, 11-5700

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 16, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| R.K., by his next friends, J.K. and R.K., | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| BOARD OF EDUCATION OF SCOTT COUNTY, | ) | District of Kentucky |
| KENTUCKY, and PATRICIA PUTTY, | ) | |
| SUPERINTENDENT, in her Individual and Official | ) | |
| Capacity, | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

Before:      **BOGGS and COLE, Circuit Judges, and OLIVER, District Judge**[*]

**BOGGS, Circuit Judge**.  R.K. is a child with Type 1 diabetes.  R.K. was not permitted to attend the neighborhood school, Eastern Elementary School, which lacked a full-time nurse, and was assigned to Anne Mason Elementary, another school in Scott County, which had a full-time nurse on duty.  R.K., by his next friends, J.K. and R.K., brought suit in federal court, alleging that the decision to assign R.K. to the non-neighborhood school constituted discrimination in violation of § 504 of the Rehabilitation Act, the Americans with Disabilities Act, the Fourteenth Amendment's

_____

[*]The Honorable Solomon Oliver, Jr., United States District Chief Judge for the Northern District of Ohio, sitting by designation.

due-process and equal-protection clauses, and K.R.S. § 344.130.  The district court granted summary judgment in favor of the defendants on all counts.

There are two separate appeals in this consolidated case.  The first appeal challenges the district court's decision granting summary judgment to the Board of Education of Scott County and Superintendent Patricia Putty (11-5070).  The second appeal challenges the district court's denial of R.K.'s motion for relief from judgment under Fed. R. Civ. P. 60(b)(2) based on newly discovered evidence that another diabetic student attends a school in Scott County that does not have a nurse on site.  (11-5700).

We vacate the judgment of the district court in 11-5070 in part, and remand for further proceedings not inconsistent with this opinion, and dismiss the appeal in 11-5700 because it is moot.

**I**

**A**

The facts, as stated by the district court, can be summarized as follows. On June 23, 2008, R.K.—then four years old—was diagnosed with Type 1 diabetes.  R.K. requires insulin injections in order to control glucose levels.  In March 2009, at an open enrollment, the child's parents enrolled R.K. at the neighborhood school, Eastern Elementary School (EES), located at 3407 Newtown Pike. R.K.'s parents informed the administration of Eastern Elementary School that R.K. would need insulin injections during the school day.  The Board of Education of Scott County Schools told R.K.'s parents that there was not a full-time school nurse on the premises of Eastern Elementary School to give R.K. injections during the day.   On August 6, 2009, the Board informed R.K.'s parents that their child would have to attend Anne Mason Elementary School (AMES), located at

350 Champion Way, and denied R.K. enrollment at Eastern Elementary School.[1]  At the time the complaint was filed on October 20, 2009—about a month into R.K.'s kindergarten year—the Board had not put forth a plan that would allow him to attend Eastern Elementary School.  In December 2009, two months after the complaint was filed and four months after the decision was made, R.K.'s parents informed the Board that R.K. had an insulin pump that eliminated the need for him to receive daily injections.[2]  R.K.'s parents argued that the Board should allow R.K. to attend Eastern Elementary and that someone other than a nurse could be trained to assist the student in monitoring the pump and counting carbohydrates (carbs).  The Board continued to deny the parents' request to transfer R.K. to Eastern Elementary School, asserting that under Kentucky law, only a nurse or other qualified medical official can monitor  R.K.'s insulin pump and assist with counting carbs.

Both parties agree that R.K. is not able to use the pump without assistance.  The Board believes that this requires him to attend a school with a nurse on site.  R.K. argues that he should be allowed to attend the neighborhood school despite the lack of a nurse on duty.  The district court granted summary judgment in favor of the Board, finding that R.K. "fails to assert that Defendants' accommodations for the Child have prevented him from receiving an adequate and beneficial education, participating in extra-curricular activities, field trips, or advancing to the next

---

[1]Eastern Elementary and Anne Mason Elementary are approximately six miles apart.

[2]James Harrison, District Services Manager for the Scott County Schools, stated in his affidavit, discussed *infra:* "As of September 21, 2009, R.K.'s insulin is now injected subcutaneously through an insulin pump."  It is unclear from the record exactly when R.K. received an insulin pump. This is a very important fact that is in dispute.

grade. The only distinction between the two schools, based upon Plaintiff's arguments, is that EES

is his neighborhood school and AMES is not." *District Ct. Op.* at 4.

**B**

The factual record in this case is quite underdeveloped, and ultimately unhelpful to resolve

the significant legal issues presented. No discovery was undertaken by the parties.[3] On appeal, both

parties, as well as amici, have varying accounts of the facts with respect to how the decision was

made to assign R.K. to Anne Mason Elementary. R.K.'s fact section has *no* references to the record

as required by Federal Rules of Appellate Procedure 28(a)(7) and 28(e). Further, R.K. attached

materials and excerpts from expert reports and publications to his brief that are not part of the

record—including expert reports submitted to *other* courts that were never considered below.

Likewise, the district court based its opinion on a number of factual statements made in the

briefs of R.K. and the Board—facts that were not to be found in any evidence. There were no

citations to any exhibits in the district court's opinion to support its account of the facts, and it did

---

[3]The jointly-filed Rule 26(f) report proposed twenty-five interrogatories, twenty-five requests for admission, and no more than fifteen depositions. On December 21, 2009, the district court ordered that all discovery would have to be completed by July 2, 2010, prior to dispositive motions, which would be due on September 27, 2010. On July 28, 2010—three weeks after the deadline—R.K. filed a motion for extension of time to complete discovery: "In support of said Motion, the Plaintiff states that discovery was prepared to be mailed to Defendant on or about May 2, 2010. Due to a clerical error, the discovery was never mailed to Defendants. The error was not discovered until July 27, 2010." Even after this date, R.K. never mailed any discovery requests. It does not appear that R.K. ever noticed any depositions or designated any expert witnesses, notwithstanding this "clerical error." On October 15, 2010, the district court granted R.K.'s motion for an extension of time to complete discovery, though the deadline for discovery to be completed was August 28, 2010, a date that had already passed. It does not appear that R.K. ever made any efforts to conduct any discovery between the filing of the complaint in October 2009 and the entry of summary judgment fourteen months later on December 15, 2010.

not mention some of the few facts that were available. This is reversible error, especially because the paucity of facts in the record shows that genuine issues of material fact are in dispute with respect to how the Board decided to assign R.K. to Anne Mason Elementary, rather than Eastern Elementary, his neighborhood school, and why it denied a subsequent request to transfer him.

The only facts in the record are found in three affidavits and a letter. There are no depositions. First, an affidavit by James A. (Tony) Harrison, a Registered Nurse (RN) and the District Services Manager for the Scott County Schools. Second, an affidavit by J.K., R.K.'s father, along with a letter from the Scott County Schools. Third, an affidavit from Leslie Scott, an Assistant Professor of Nursing at the University of Kentucky.

**1**

Harrison is a "member of the School District's §504 Committee." He stated that he "reviewed all [of R.K.'s] glucose readings obtained during school hours from September 21, 2009 through December 14, 2009." It is unclear if he was involved in the review of R.K.'s case during the summer of 2009 or if he was involved in the initial decision to assign him to Anne Mason Elementary, which is the only stated subject of R.K.'s complaint. Harrison acknowledged that as of September 21, 2009, R.K.'s insulin was injected through an insulin pump. Harrison discussed the procedures that Rose Lewis, the full-time RN at Anne Mason Elementary, had to go through to monitor R.K.'s pump and help him count carbs.

Based on a review of R.K.'s glucose readings, Harrison observed that R.K.'s readings were "outside [R.K.'s physician's] requested glucose range 48% of the time." "Low glucose readings (hypoglycemia) occurred 12% of the time and high glucose readings (hyperglycemia) were obtained

36% of the time." Harrison found that these spikes and drops in his glucose level "require decision-making to determine if treatment is necessary, and what type of treatment to use." Upon reviewing how the nurse handled these events, Harrison observed "that there also is an element of prevention in the treatments provided by Mrs. Lewis upon the occurrences of hypoglycemia and hyperglycemia, precluding a more severe health care event."

Harrison acknowledged that there are other elementary school students with diabetes who attend Scott County schools where full-time nurses are not on duty. "School District decisions pertaining to whether a student with special health care needs may require full time care and over-site [*sic*] by medically trained staff are individualized. Two factors weigh heavily in this decision: 1) whether a student has medical orders that specify self-treatment; and, 2) the stability of the student's health condition indicating the degree of risk for the student."

This admission, which was known to R.K. when he filed his motion for relief of judgment, undercuts the relevance of the affidavit that another diabetic student was permitted to attend a Scott County school that did not have a full-time nurse. Further, Harrison's admission supports the Board's contention—contrary to R.K. and the United States's claim—that it undertakes an individualized approach to accommodating students with disabilities. It does not have a blanket policy of sending *all* diabetic students to schools with a nurse on duty. Indeed, Harrison lists eighteen different "factors [that] are considered in deciding the intensity and frequency of care for each individual student with special health care needs." He states that "both General and individual factors are considered and analyzed to evaluate health care needs for each individual student."

It was Harrison's "professional opinion . . . that R.K.'s glucose readings are erratic and are best served by a school nurse to accommodate his health care needs, ensure his safety and well being, and minimize any detrimental effects on his learning." He made this decision in light of the fact that he had "been determined by his treating physician to be unable to give his own insulin injections, and requires assistance with all aspects of the management of his medical condition while at school, including with the operation of the insulin pump." Therefore, "as part of the School District's §504 Committee, [Harrison] recommended that R.K. remain at the school where he is attended throughout his day by an RN [at Anne Mason Elementary], to ensure a trained and licensed professional is monitoring and providing for his health care needs."

Harrison based this specific decision on five factors. First, "R.K.'s glucose levels were out of [the] acceptable range 48% of the time during school hours." Second, "R.K continues to receive subcutaneous injections of insulin." Third, "[i]t is the professional opinion of the Affiant, consistent with advisory opinions of the Kentucky Board of Nursing, that the administration of medication via any injectable route should not be delegated to unlicensed personnel unless for immediate intervention in a life threatening situation." Fourth, "[t]eachers, paraprofessionals, bus drivers and other educational personnel are not trained nor qualified in medical care." Fifth, Harrison "would not recommend the delegation of duties to these other school employees regarding administration of medication to R.K." Harrison does not mention who else participated on the § 504 Committee, nor does he explain how anyone else on the Committee reached a decision.

The district court did not once cite Harrison's affidavit, nor did R.K. acknowledge its existence other than to argue that Harrison should not have relied on advisory opinions of the

Kentucky Board of Nursing. None of these facts were mentioned by the United States or the American Diabetes Association in their amicus briefs. This case seems somewhat schizophrenic—there is on one hand the actual case, and on the other, the case that R.K. and amici present for this court to resolve. We decline the latter invitation.

However, we do not think that the Harrison affidavit allows this court to affirm on alternate grounds. Harrison's analysis only focused on R.K.'s condition *after* Scott County knew he had the insulin pump, sometime between September and December of 2009. We can assume, but cannot know for certain, that the same factors were considered by the Board in its decision in August 2009 to assign R.K. to Anne Mason Elementary—that is, before R.K. filed suit in federal court. And it is this decision that is the subject of R.K.'s complaint, which was never amended. Such questions would be appropriate questions during a deposition of Harrison or others involved in the § 504 Committee after remand.

**2**

The other primary piece of evidence in the spotty record is an affidavit of J.K., R.K.'s father. J.K. stated that he informed the Board that R.K. had diabetes when he registered the child in March 2009. J.K. "received a call from Jan Sharp, Director of Child and Family Services for Scott County Board in April 2009," who told J.K. that "R.K. should attend Western Elementary or Anne Mason Elementary." J.K. informed Ms. Sharp that he wanted R.K. to attend Eastern Elementary. "After several calls and many meetings Scott County Board of Education told us that R.K. would only be able to attend Anne Mason Elementary or Western Elementary." J.K. provided no information about what transpired at these meetings, where they occurred, whether they were § 504 meetings, or who

attended these meetings. J.K. stated that "[a]t the beginning of the 2009-2010 school year my wife and I were informed that our son could not attend Eastern Elementary due to the fact there was not a school nurse assigned to Eastern Elementary. Due to the fact that my son may need insulin injections during the day Scott County Board of Education assigned him to Anne Mason Elementary School which had a school nurse." J.K. recounted that he was "told by Scott County Board of Education that the *only reason* our son was being assigned to Anne Mason was due to his diabetes." (emphasis added). J.K. stated that he was told that if "R.K. did not need injections he could be transferred to his neighborhood school Eastern Elementary."

On December 14, 2009, J.K. informed the "director of 504 compliance . . . that our [child] was now using an insulin pump and would not need insulin injections during the day."[4] The Board denied his transfer to Eastern Elementary, based on a letter dated January 5, 2010. The letter states:

> The Scott County School District Review Team met December 17, 2009 to review your request that [R.K.], attend [the] home school, Eastern Elementary. The review team read and discussed the amended Section 504 Accommodation Plan and minutes taken during the December 14, 2009 meeting. The minutes[5] reflect concerns noted by District nurses Rose Lewis and Tony Harrison in allowing untrained staff to be responsible for the implementation of the Accommodation Plan. Mr. Harrison stated there is a risk allowing an unlicensed medical person to carry out the plan. Further, Mrs. Lewis noted that although R.K. is not receiving an injection, the use of the insulin pump is infusion and she does not recommend delegating this responsibility to another person.

---

[4]Again, it seems that R.K. had the pump installed earlier, in September 2009. The record is unclear why J.K. would have waited this long to tell the Board—especially after he had filed suit in federal court.

[5]The minutes are not in the record.

> The review team has considered all information and supports the opinions of Mr. Harrison and Mrs. Lewis. R.K. will continue to attend a Scott County School where a nurse is stationed full time. The team makes this decision putting the safety and well-being of R.K. first. The two schools that meet this requirement are Anne Mason Elementary School and Western Elementary School. Transportation will be provided to either school.

The letter was signed by Superintendent Patricia Putty, Section 504 Coordinator Martin Hendrix, Director of Child and Family Services Jan Sharpe, Director of Elementary Curriculum Matthew Thompson, and District Nurse Tony Harrison. The letter is entirely consistent with Harrison's affidavit.

J.K. also talks about events that transpired after R.K.'s kindergarten year—that he attended a YMCA day camp where there was no nurse on duty, that he was denied a transfer during the following school year, that the school stated that R.K.'s attendance at Eastern Elementary "would expose Scott County to liability if [R.K] became ill or injured,"[6] and that R.K. attended a Taekwondo Academy that lacks a nurse. All of these events relate to facts that occurred after, and are unrelated to, the filing of the unamended complaint. The time frame of this appeal is limited to R.K.'s kindergarten year, the 2009–2010 school year. As the district court noted, all events subsequent to R.K.'s kindergarten year are beyond the scope of this case: "Defendants point out, and this Court agrees, that the Plaintiff has not requested leave to file a supplemental Complaint outlining any additional facts or allegations regarding the 2010- 2011 school year, and thus any facts occurring

---

[6]The United States focuses a great deal on this statement. It is unclear where J.K. gleaned this fact. The January 5, 2010 letter references the "risk allowing an unlicensed medical person to carry out the plan," though we suspect that this "risk" refers to possible harm to R.K. rather than risk of tort liability. J.K. may have adopted the latter interpretation.

after the 2009-2010 school year are not technically before the Court." *District Ct. Op.* at 2, n.1. A remand and an amended complaint would be necessary in order for the district court to consider any of these events in the first instance.

**3**

The final affidavit is from Leslie Scott, an Assistant Professor at the University of Kentucky College of Nursing. In this affidavit, she offers opinion testimony that "[i]t is not difficult nor time consuming to train a lay person to administer to a child's needs in the school setting." Further Scott stated that it was her "opinion that unlicensed school personnel properly trained can safely and accurately administer and/or monitor insulin in the school setting." The American Diabetes Association makes similar arguments in its amicus brief. Finally, Scott concludes that it "is my opinion that in the absence of a school nurse insulin and carbohydrate counting can be administered/performed by a trained non-licensed person safely and effectively in the school setting." Scott was never qualified as an expert witness, nor was she involved in the decision to assign R.K. to Anne Mason Elementary. "Under Fed.R.Civ.P. 56(e), affidavits submitted in opposition to a summary judgment motion 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Monks v. General Elec. Co.*, 919 F.2d 1189, 1192 (6th Cir. 1990). "Affidavits composed of hearsay and opinion evidence do not satisfy Rule 56(e) and must be disregarded." *State Mut. Life Assurance Co. v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979). Had this evidence been submitted as an expert report, it may have been probative, but as an affidavit, it is simply inadmissible opinion testimony.

**C**

There seems to be a conflict between the affidavit accounts of Harrison and J.K. Harrison attested, as confirmed by the letter, that an individualized assessment was made based on R.K.'s glucose levels and other factors specific to him. R.K.'s father disputes this conclusion and claims that no individualized assessment was made—the child was simply discriminated against based on the fact that he had diabetes.[7] Further, R.K.'s claim is undermined by the Board's position that it considered multiple factors when reassigning R.K. and not simply whether a nurse was available. Because there are no depositions in the record, there is no way to assess their accounts through the adversarial lens.

The factual record is too incomplete to assess, under the ADA and § 504, whether the decisions made by the Board—both during the summer of 2009 and during R.K.'s kindergarten year—constituted any form of discrimination There is a genuine issue of material fact in dispute as to whether individualized factors were considered by the Board in making these decisions. Summary judgment in favor of the Board was not appropriate.

**II**

Judgment should be entered in favor of Patricia Putty. In the complaint, R.K. named Patricia Putty, Superintendent of the Board of Education of Scott County, Kentucky, as a defendant in her individual and official capacity. However, the complaint makes no allegations whatsoever to support

---

[7]The United States alludes to a claim that the Board had a blanket policy where all students with diabetes would be reassigned to schools with a nurse regardless of any individualized analysis. This claim does not seem to be supported by any admissible evidence.

any cause of action against her. Likewise, R.K.'s appellant brief contains no facts to support a cause of action against her—there is one mention of Putty having a conversation with R.K.'s parents, but there is no citation to the record. The January 5, 2010 letter to R.K.'s parents was signed by Putty. On appeal, R.K. argues in passing that Putty should not receive immunity in her individual capacity. Appellant Br. at 33. R.K. makes no argument on appeal with respect to Putty in her official capacity. R.K. has not asserted any legal claims supported by facts, either in the trial court or on appeal, against Putty. There is no need to reach the issue of whether Putty should have received immunity. Putty is entitled to judgment as a matter of law.

## III

## A

On remand, the parties should engage in discovery to assess precisely how the decision was made to assign R.K. to Anne Mason Elementary. The minutes of the December 14, 2009 meeting would seem to be particularly appropriate. Without such facts, resolution of the complicated, fact-intensive inquiries involved in an ADA or § 504 case would be impossible. Also, giving R.K. an opportunity to amend the complaint may clarify the scope of the issues before the court and allow an assessment of how R.K.'s ability to manage his diabetes has progressed. As it stands now, the events are limited to the kindergarten year. This fall, R.K. will likely be entering the third grade. A complete factual record would permit the district court to apply the correct legal standards.

**B**

As the United States and the National School Board Association point out in their helpful amicus briefs, the district court did not consider a wealth of law in this area and failed to apply the correct standards in analyzing whether the Board complied with § 504 of the Rehabilitation Act.[8]

Students with diabetes will generally be protected by § 504 of the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The district court did not mention any of a number of § 504 regulations promulgated by the Department of Education. *See, e.g.*, 34 C.F.R. § 104.10(a) ("The obligation to comply with [those regulations] is not obviated or alleviated by the existence of any state or local law or other requirement that, on the basis of handicap, imposes prohibitions or limits upon the eligibility of qualified handicapped persons to receive services . . . ."); *id*. § 104.4(b)(iv) ("[Covered entities may not p]rovide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others."); *id*. § 104.33(a) (requiring that elementary schools provide a "free appropriate public education" (FAPE) to students with

---

[8]The protections of Title II of the ADA can be greater than, but not less than, the protections afforded by § 504. Title II of the ADA "shall not be construed to apply a lesser standard than the standards applied under [Section 504] or the regulations issued by Federal agencies pursuant to that [statute]." 28 C.F.R. § 35.103(a); *see also* 42 U.S.C. § 12134(b). Therefore, satisfaction of the § 504 requirements will also satisfy the requirements of Title II of the ADA.

disabilities "regardless of the nature or severity" of the students' disabilities).[9] Without considering these rules, the court failed to develop an appropriate factual record in light of any of these standards and the circumstances of the case.

A key regulation not addressed below is that the schools must conduct an individualized assessment of the student's needs before making a school placement decision. 34 C.F.R. § 104.35. Schools must consider a variety of information, including the student's "aptitude and achievement tests, teacher recommendations, physical condition, social or cultural background, and adaptive behavior." *Id*. § 104.35(c).

Based on the record, it is unclear if such an individualized assessment occurred when assigning R.K. to Anne Mason Elementary and denying a later transfer request. Harrison's affidavit suggests that, at least with respect to the denial of R.K.'s transfer request during the school year, the school may have considered many of these factors. J.K. argues that none of these factors were considered. Further, we know nothing about what factors went into the decision to initially assign R.K. to Anne Mason Elementary. The record is not sufficient to allow an assessment of whether the Board complied with these regulations.

## C

Finally, the United States raises an important issue with respect to whether the Supremacy Clause trumps possible concerns by the Board about avoiding tort liability under Kentucky law.

---

[9] The district court mentioned the FAPE requirements in the context of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415, not in the context of the Rehabilitation Act. The IDEA was not at issue in this case.

"Even if Kentucky law barred a lay person from administering insulin in public schools, such a state law requirement must yield to federal obligations." United States Br. at 24. This issue was not addressed below. Bundled up in this issue is whether it would have been feasible for the Board to delegate to a non-professional the responsibility of monitoring R.K.'s blood sugar and carb count. Harrison suggested in his affidavit that this would not have been safe. On remand, briefing on this point would be instructive, as the issue of field preemption may be more complicated than the United States suggests. *See* Nat'l Sch. Bds. Ass'n Br. at 12–18.

## IV

The judgment of the district court with respect to the Board is VACATED, and REMANDED for further proceedings not inconsistent with this order. The judgment with respect to Putty is AFFIRMED. Because we vacate the order granting summary judgment, we need not address the appeal from the denial of R.K.'s motion for relief from judgment, which is moot.