NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0079n.06

No. 14-6213

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 05, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| R.K., by his next friends, J.K. and R.K., | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| BOARD OF EDUCATION OF SCOTT COUNTY, | ) COURT FOR THE EASTERN |
| KENTUCKY, | ) DISTRICT OF KENTUCKY |
| | ) |
| Defendant-Appellee. | ) |
| | ) |

Before: GUY, MOORE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. R.K.'s parents believe that the Scott County school board discriminated against their diabetic son by moving him out of his neighborhood school to a different school that had a full-time nurse on staff. They brought this suit, asserting claims under the Americans with Disabilities Act, the Rehabilitation Act, and state law, among other things. The district court granted summary judgment to the school board. We affirm.

I.

R.K. was diagnosed with Type-1 diabetes at the age of four. As a result, he needs periodic insulin injections and must monitor his sugar intake throughout the day. In March 2009, R.K.'s parents tried to enroll him in kindergarten for the coming school year at Eastern Elementary. Eastern is one of five elementary schools in Scott County and the school that children in R.K.'s neighborhood were zoned to attend. R.K.'s parents told school administrators

that R.K. was diabetic and needed daily insulin injections. At the time, R.K. used a pen needle for his injections; the device resembles a large ink pen with a needle on one end. The user must dial the appropriate insulin dosage on the device, insert the needle into his skin, and press a button to deliver the insulin dose. R.K.'s parents also submitted a Preventative Health Care Examination Form, prepared by R.K.'s doctor (and required by the Commonwealth of Kentucky), that stated: "For [R.K.'s] diabetes, will require frequent finger stick glucose checks + nurse to help with insulin administration."

After a series of meetings with R.K.'s parents, the school board concluded that R.K. should attend a school with a full-time nurse on staff. That left Western Elementary and Anne Mason Elementary as the only options for R.K. His parents thought that R.K. did not need a nurse's help with his injections, but that if he did, a nurse could come from one of the other schools to Eastern during lunch. The school board disagreed and enrolled R.K. at Anne Mason.

In September 2009, during R.K.'s kindergarten year, R.K. transitioned from the pen needle to an insulin pump. The pump automatically delivers insulin doses over the course of the day. R.K.'s physician prepared a diabetes-management plan which provided that R.K. "must be supervised by an adult with dose administration via pump." R.K.'s parents renewed their request to transfer R.K. to Eastern.

In December 2009, the school board met with R.K.'s parents. At the meeting, school district nurses Rose Lewis and Tony Harrison expressed concerns about allowing untrained staff to supervise R.K. Lewis also noted that the insulin pump is an infusion, which she did not recommend delegating to someone other than a nurse. As a result, the school board denied R.K.'s request to transfer. R.K. finished his kindergarten year at Anne Mason.

The following school year, 2010-2011, R.K.'s parents sought to enroll him at Eastern for first grade. Prior to the start of the school year, the school board met with R.K.'s parents and considered an updated diabetes-management plan from R.K.'s physician. According to the new plan, R.K. was "independent in manipulating his pump" and only needed help counting carbohydrates—help that, according to R.K.'s doctor, could be rendered "by any trained layperson" and "[d]oes not require nurse." Despite the physician's note, the school board continued to think that R.K. needed a nurse's supervision after considering R.K.'s independence in using the insulin pump, his maturity, variations in his blood-sugar levels, and the number of times he required treatment during the day. R.K. remained at Anne Mason for the first grade.

By second grade, R.K. was fully independent in using his insulin pump, so the school board enrolled him at Eastern as his parents requested. Two months into the school year, however, R.K.'s family moved to a different school zone.

In the middle of the transfer dispute, R.K. (through his parents) sued the school board and superintendent. R.K. claimed that the school board violated the ADA, the Rehabilitation Act, the Fourteenth Amendment, and the Kentucky Civil Rights Act by sending him to Anne Mason. As remedies, he sought injunctive relief and money damages. The district court granted summary judgment to the school board and the superintendent on all claims. R.K. appealed. We affirmed the grant of summary judgment to the superintendent, but vacated the grant of summary judgment to the board and remanded for further discovery. *R.K. ex rel J.K. v. Bd. of Educ. of Scott Cnty.*, 494 F. App'x 589 (6th Cir. 2012). After discovery, the district court again granted summary judgment to the school board. R.K. now appeals as to his claims under the ADA, Rehabilitation Act, and Kentucky Civil Rights Act.

II.

We review de novo the district court's grant of summary judgment. *Gradisher v. City of Akron*, 794 F.3d 574 (6th Cir. 2015). We may affirm on any grounds supported by the record. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012).

As applied here, the ADA and Rehabilitation Act cover largely the same ground. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008). In addition, the Kentucky Civil Rights Act mirrors the ADA and Rehabilitation Act. *Brohm v. JH Prop. Inc.*, 149 F.3d 517, 520 (6th Cir. 1998); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003). Thus, we analyze all three claims together.

The parties devote the bulk of their argument to whether R.K. has a substantive right to attend his neighborhood school under the Rehabilitation Act and ADA, and if so whether the school board violated that right. But the parties overlook another element of R.K.'s claims, which is whether he can obtain the remedies he seeks.

R.K. seeks two remedies: First, he seeks to enjoin the school board from denying him an "educational opportunity" or "singling him out for disparate treatment" because of his diabetes. In March 2014, however, Kentucky amended KRS § 158.838 to provide that "a school district shall permit a student who has diabetes . . . to attend the same school the student would attend if the student did not have diabetes," and that the school district "shall not prohibit a student has diabetes . . . from attending any school on the sole basis that . . . [t]he school does not have a full-time nurse." KRS § 158.838(8)(a). Thus, the new statute already forbids the actions that R.K. seeks to enjoin. Moreover, for years now, the school board undisputedly has not "singled out" R.K. for disparate treatment based on his diabetes. R.K. presents no evidence to suggest that this will change any time soon. Thus, his request for injunctive relief is moot.

Second, R.K. seeks money damages. The parties agree that, to obtain money damages under the ADA and the Rehabilitation Act, R.K. must show that the school board acted with "deliberate indifference" towards his federally-protected rights. *See generally Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). (We assume without deciding that the parties are correct on this point, *see Hill v. Bradley Cnty. Bd. of Educ.*, 295 F. App'x 740, 742 (6th Cir. 2008)). A party acts with deliberate indifference if it disregards a "known or obvious consequence" of its actions, namely that its actions will violate the plaintiff's federally-protected rights. *See Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410-11 (1997). Here, R.K. points to no evidence that the school board knew that it would likely violate his rights when it assigned him to a school with a full-time nurse. That is true even though R.K. had two opportunities to conduct discovery—both before his first appeal and before this one. This is not a case where a school board ignored a student's request for help. Rather, the student's parents simply disagreed with the school as to whether a nurse was necessary to provide it. Thus, as a matter of law, R.K. is not entitled to damages on his federal claims.

We analyze claims under the Kentucky Civil Rights Act the same way we analyze claims under the federal statutes. *See Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). R.K.'s evidence (or lack thereof) is the same for his state and federal claims. R.K. therefore cannot recover damages under the Kentucky Civil Rights Act either.

Because R.K. is not entitled to any of the relief he seeks, we have no occasion to reach the question whether any of the anti-discrimination statutes guarantees a right to attend one's neighborhood school.

\* \* \*

The district court's judgment is affirmed.

**KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.** I agree that R.K.'s request for injunctive relief is moot, in light of his family's relocation to a new part of Scott County, the decision of the Board of Education of Scott County ("the School Board") to assign R.K. to his new neighborhood school ever since, and Kentucky's recent enactment of a law requiring that diabetic children be educated in the public school to which they would otherwise have been assigned. I dissent from the majority's holding that R.K. cannot recover compensatory damages as a matter of law, however, because R.K. has proffered facts from which a jury could infer that the School Board was aware that a nurse was not required to assist R.K. and that an adult could easily be trained to provide the necessary assistance. I would therefore reach the merits of R.K.'s argument that the School Board discriminated against R.K. by denying him a generally available benefit—assignment to one's neighborhood school—based solely upon a concern regarding the availability of a nurse to supervise his diabetes treatment at his neighborhood school.

As the majority recognizes, compensatory damages under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act are available only upon a showing of intentional discrimination, which most courts have held requires a finding that the public entity acted with deliberate indifference. *See S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260–63 (3d Cir. 2013); Maj. Op. at 5 (noting that the parties agree that the deliberate-indifference standard applies to this case). The deliberate-indifference standard "requir[es] both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *S.H.*, 729 F.3d at 263 (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). The majority rests on the first prong, holding that R.K. failed to

submit evidence to show "that the school board knew that it would likely violate his rights when it assigned him to a school with a full-time nurse." Maj. Op. at 5. I disagree.

The requisite knowledge is shown "[w]hen the plaintiff has alerted the public entity to his need for accommodation." *Duvall*, 260 F.3d at 1139. Accordingly, it is enough that a plaintiff has given the public entity the information necessary to understand the need for and reasonableness of the requested accommodation. *See, e.g.*, *id.* at 1040 (hearing-impaired litigant informed county-court staff of his need for "videotext display" for court hearings and of the inadequacy of preexisting accommodations for the hearing impaired); *S.H.*, 729 F.3d at 265 (plaintiff alleging wrongful diagnosis and placement in special education was required to prove "knowledge that a federally protected right is substantially likely to be violated (i.e., knowledge that S.H. was likely not disabled and therefore should not have been in special education)"); *Mark H v. Hamamoto*, 620 F.3d 1090, 1099 (9th Cir. 2010) (holding, in a case alleging that the Hawaii Department of Education failed to accommodate the needs of autistic children, that "Hawaii DOE had knowledge that a harm to a federally protected right was substantially likely if Hawaii DOE knew that Michelle and Natalie needed accommodation of autism-specific services"); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276–77 (2d Cir. 2009) (hospital had appropriate level of knowledge of patient's need for an American Sign Language interpreter where the patient and family members alleged making "attempts to secure an interpreter prior to surgery" and afterward).

R.K. has provided sufficient evidence from which a jury could find that the School Board acted with this level of knowledge. R.K.'s parents repeatedly requested that the School Board train a non-nurse at Eastern Elementary to assist R.K. in counting carbohydrates and administering insulin. *See* R. 82-2 (J.K. Aff. ¶¶ 5–7, 13–16, 18, 20) (Page ID #588–92). The

record further contains evidence from which a jury could find that the School Board was aware that a nurse was not required to assist R.K. *See id.* ¶ 13 (Page ID #590) (stating that the County's Director of Child and Family Health Services—who was present at the July 2009 meeting with R.K.'s parents and School Board officials—indicated that "an insulin pump, unlike injections, does not require a nurse's presence"); R. 84-13 (Sept. 18, 2009 Diabetes Medical Management Plan at 3) (Page ID #1189) (form filled out by R.K.'s doctor, which stated "[t]he student must be supervised by an adult with dose administration via pump"); R. 84-20 (July 28, 2010 Diabetes Medical Management Plan at 4–5) (Page ID #1214–15) (form filled out by R.K.'s doctor, stating that "any trained layperson can supervise or help put into pump," that "[R.K] is independent in manipulating his pump," and that R.K "[d]oes <u>not</u> require nurse").[1] Finally, the record contains evidence from which a jury could conclude that the School Board was aware of the ease with which a non-nurse could be trained to assist someone in R.K.'s position. *See* R. 82-2 (J.K. Aff. ¶¶ 10, 14) (Page ID #589, 591). Because a jury finding that R.K. requested an accommodation and that the School Board knew that the accommodation was needed and could be provided is all that is needed to establish the knowledge necessary for a finding of deliberate indifference, I dissent from the majority's conclusion that R.K. is not entitled to compensatory damages as a matter of law.

---

[1]Additionally, albeit in testimony that was often conflicting, Tony Harrison, the School Board's Director of Nursing, admitted that having someone who was "trained" to assist R.K. would have been acceptable and later said that having a nurse was better, but not required. *See* R. 82-4 (Harrison Dep. at 22:7–26:21, 35:1–18, 42:18–43:1, 48:16–19, 49:2–4, 50:3–15, 70:10–13) (Page ID #653–57, 666, 673–74, 679–81, 701).