Rebecca A. **MILLS**, Plaintiff,

v.

**GIBSON GREETINGS, INC.**, Defendant.

Civ. A. No. 92–161.

United States District Court,
E.D. Kentucky, at Covington.

Sept. 22, 1994.

Rebecca K. Kaye, Thomas R. Smith, Cincinnati, OH, for plaintiff.

Brian P. Gillan, Robert B. Craig, Taft, Stettinius & Hollister, Crestview Hills, KY, for defendant.

## MEMORANDUM OPINION

BERTELSMAN, Chief Judge:

### I. INTRODUCTION

Plaintiff Rebecca A. Mills filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and KRS 344.010, *et seq.*, alleging that Defendant Gibson Greetings, Inc. terminated her employment based on her sex.[1] This matter is before the court on Gibson's motion for summary judgment.

### II. FACTUAL BACKGROUND

■ Mills was employed by Gibson from February 16, 1985 through April 17, 1991. At the time of her termination, Mills held the position of supervisor in the assembly department. Mills was terminated for unprofessional conduct after engaging in an argument of a personal nature with an employee with whom Mills was trying to cultivate an intimate relationship.[2]

Mills had a history of developing personal relationships with subordinates and allowing her personal problems with these individuals to disrupt the work environment. In 1987, Mills became involved with an employee in her department. Mills acknowledged that she and the employee had personal disagreements in the workplace on at least a dozen occasions, many of which were witnessed by other employees. Ultimately, Mills was counselled by Donna Allen, Mills' supervisor, about letting her personal relationships interfere with work. Allen informed Mills that the Company would be forced to take further action if Mills continued to allow personal

disputes to interfere with her working relationships.

In late 1990, Mills attempted to cultivate a relationship with Alison Stratton, an hourly employee in the stocking department. Mills frequently visited Stratton in the stocking department during work hours to discuss personal matters. After other employees complained about the amount of time Mills spent in their department, Stratton asked Mills to stop coming to the department so frequently. Mills disregarded Stratton's request.

In January, 1991, Stratton wrote a memorandum to her supervisor, Greg Mullins, requesting his assistance in resolving the problem with Mills.[3] Stratton informed Mullins that she had asked Mills to stop interrupting her work, but that Mills disregarded the request and continued the interruptions. Mullins discussed the situation with Mills. Mills agreed that she would refrain from interrupting Stratton during work hours. Mills, however, did not follow through with the agreement. When the interruptions continued, Stratton sought a transfer to another shift in order to avoid the pressures created by Mills.

In the late afternoon of April 12, 1991, Mills returned to the plant after her shift ended to authorize payroll for the employees that she supervised. Despite her previous agreement to refrain from speaking with Stratton during work hours, Mills immediately went to Stratton's work station at a machine on an assembly line. Mills proceeded to engage in at least a 45 minute conversation with Stratton. Mills acknowledged that Stratton was on the clock at the time and that the conversation was of a personal nature. The discussion at some point turned into an argument. Mills conceded that for at

---

1. Mills' complaint also raised state law claims for intentional infliction of emotional distress and defamation. In an order dated June 3, 1994, the court granted summary judgment to Gibson on the state law claims.

2. Gibson disputes many of the facts and occurrences as set forth in this opinion. In ruling on a motion for summary judgment, however, the court must construe the facts in the light most favorable to the non-moving party. The court,

therefore, relies primarily on the deposition testimony of Mills and Alison Stratton for setting the factual background. The "facts" as stated herein, however, are not meant to be factual findings of the court, but, rather, a recitation of the facts in the light most favorable to Mills.

3. Mills was not named in the memorandum to Mullins. There is no dispute, however, that Mills was the employee to whom Stratton referred.

least the last five or ten minutes of the conversation, the discussion was carried on in raised voices. Further, Mills acknowledged that Stratton made repeated requests that Mills leave.

By the time Mills finally left, other employees had reported the incident to Ron Thomas, the acting shift supervisor. On Monday, April 15, 1991, the incident was reported to Mike Ramsey, Operations Manager, and Nelson Seip, Human Resources Manager. On the same day, Ramsey and Seip discussed the situation with Mills. Mills admitted that she had an argument with Stratton at her work station on the prior Friday. Mills also admitted that Mullins had previously requested that she not talk to Stratton during work hours. In addition, Ramsey and Seip interviewed the employees who witnessed the argument between Stratton and Mills. Based on the Company's investigation, it determined that Mills' continuing conduct in harassing Stratton and interfering with Stratton's work created a disruptive work environment and was conduct unbecoming a supervisor. Thus, Mills was terminated on April 17, 1991.

## III. ANALYSIS

1. **Plaintiff Cannot Establish a *Prima Facie* Case of Sex Discrimination.**

 In order to state a *prima facie* case of sex discrimination, a plaintiff must establish, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) she was discharged; (3) she was qualified for the position which she held; and (4) she was replaced by a person outside the protected class or, in the alternative, that a comparable person outside of the protected class was treated more favorably than the plaintiff. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992);

*Ang v. Procter & Gamble Co.,* 932 F.2d 540, 548 (6th Cir.1991). The only dispute at issue herein is whether Gibson treated comparable male employees more favorably than it treated Mills.[4]

The standard for analyzing a comparable treatment claim in this Circuit was set forth by the Court in *Mitchell v. Toledo Hospital,* 964 F.2d 577 (6th Cir.1992). In *Mitchell,* the court stated that the plaintiff is required to show that the comparable employee is "similarly-situated in all respects.... Thus, to be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the *same conduct* without such distinguishing or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* at 583 (emphasis added).

Furthermore, in applying the *Mitchell* standard, this court has stated that to meet the similarly situated requirement, "the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the non-minority employees who he alleges were treated more favorably. The similarity ... must exist in all relevant aspects of their respective employment circumstances." *Pierce v. Commonwealth Life Ins. Co.,* 825 F.Supp. 783, 787 (E.D.Ky.1993) (quoting *Ruth v. Children's Medical Ctr.,* 1991 WL 151158 at *7 (6th Cir.1991)).

 In attempting to establish a *prima facie* case of comparable treatment, Mills points to numerous situations which she claims are comparable, only one of which is similar enough to discuss.[5] Mills alleges that Jerry Klein, a supervisor, had a physical altercation with another employee. In 1986 or 1987, Linda Smoot, a quality control/as-

---

4. The parties dispute whether Mills was replaced by a person outside of the protected class. A female, Maureen Wyendandt, filled the position vacated by Mills. Mills alleges that Wyendandt was forced to take the position vacated by Mills. It is not necessary, however, for the court to resolve this disputed fact to rule on Gibson's motion for summary judgment.

5. Mills alleged that one male supervisor was engaged in dealing drugs on Company premises and that another supervisor forced a female employee to engage in sexual acts during work hours. Mills did not present any evidence, other than hearsay, to support these allegations.

sembly inspector, stopped to speak with an employee in Klein's department. Smoot was standing on palettes at the time. Klein, according to Smoot, did not tolerate any type of work disruptions in his department. When Klein noticed the employees engaged in conversation, he allegedly approached Smoot, slapped her on the back and told her to leave his people alone. Smoot stumbled off the palettes.

Klein's conduct cannot be considered comparable to the conduct of Mills. The dispute between Klein and Smoot was work related, rather than personal. Klein was involved in a single, spontaneous incident. Mills, on the other hand, engaged in a pattern of conduct which disrupted the workplace. Mills admittedly had been counselled by Donna Allen regarding bringing her personal disputes to work. In addition Mullins had specifically requested that Mills refrain from talking with Stratton during work hours.

Mills failed to present any evidence that any other supervisor bothered employees during work hours after being requested not to do so, or disrupted the work force over personal matters. Mills, therefore, has failed to demonstrate that any other supervisor engaged in conduct "similar in all respects" or "nearly identical" to the conduct for which she was terminated. In fact, when asked about what she relied on in claiming that her discharge was based on sex, Mills stated: "I'm talking about misconduct. Period. *Maybe not the same as mine,* but misconduct, period."

As emphasized by the court in *Mitchell,* however, the plaintiff's subjective belief that she was treated differently than employees who engaged in activity which the plaintiff considered of a more serious nature is not sufficient to satisfy her *prima facie* case. The court stated that "[p]laintiff's allegations regarding other employees not being fired for different, but what she subjectively believes to be more serious, misconduct does not satisfy [the comparable treatment] element...." 964 F.2d at 583.

Similarly, herein, Mills' assertion that other employees engaged in serious misconduct is not sufficient to carry her burden of establishing a *prima facie* case. Simply put, Mills

has failed to show that a non-minority employee engaged in conduct similar in all respects to the conduct for which she was terminated and was treated more favorably. Mills, therefore, has failed to establish a *prima facie* case of sex discrimination and Gibson is entitled to judgment as a matter of law.

**2. Gibson Has Presented a Legitimate Non–Discriminatory Reason for Mills' Discharge.**

■ If a plaintiff carries her burden of establishing a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Once the defendant carries this burden, the presumption of discrimination raised by the *prima facie* case is rebutted and drops from the case. *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The plaintiff may still prevail, however, if she can demonstrate by a preponderance of the evidence that the defendant's proffered reason was a pretext for discrimination. "A reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* at ——, 113 S.Ct. at 2752 (citation omitted).

■ Even assuming that the court found that Mills had established a *prima facie* case, Gibson articulated a legitimate, non-discriminatory reason for its actions. It is undisputed that in January, 1991, Mullins asked Mills to stay away from Stratton. Stratton, in fact, requested a shift change in order to relieve the pressure she felt at work from Mills' constant attention. Mills, nonetheless, admittedly engaged Stratton in at least a 45 minute conversation during Stratton's shift on April 12, 1991. Mills does not dispute that the conversation was of a personal nature or that it escalated into an argument. Mills also does not dispute that she ignored Stratton's repeated requests that Mills leave. Further, Mills admitted that she had previously been counselled by Donna Allen re-

garding allowing her personal problems to disrupt the work environment.

Mills has not come forward with any evidence from which to conclude that Gibson's proffered reasons for her discharge were a pretext or that discrimination was the real motivating factor for the Company's actions. The shifting burdens of proof outlined above, including the analysis of similar disciplinary actions with regard to others, is all an organized way of focusing on whether plaintiff has any evidence that the motive for her termination was a prohibited discriminatory one.

Here, the analysis confirms the glaring defect in plaintiff's case. She caused an incident on the factory floor which distressed some of her subordinates.

Whether the employer was insensitive, hard-hearted or unreasonable in firing her is not the question. There is no doubt whatever that she was terminated because of her conduct and not because of discrimination against women.

The law does not guarantee an employee an enlightened or reasonable employer, but only protection against age, race, religious or gender discrimination.

### 3. Mills Has Failed to State a Claim Under KRS 344.010.

Mills' claim that her discharge was in contravention of the anti-discrimination provisions of KRS 344.010, *et seq.*, must fail for the same reasons that the court must reject her Title VII claim. The Kentucky discrimination statute is modeled after, and is virtually identical to, Title VII. *Harker v. Federal Land Bank*, 679 S.W.2d 226, 229 (Ky. 1984); *Kentucky Comm'n Human Rights v. Commonwealth of Kentucky*, 586 S.W.2d 270, 271 (Ky.Ct.App.1979). Kentucky courts have, therefore, followed federal law in interpreting its anti-discrimination statute. *Id.; see also Gafford v. General Elec. Co.*, 997 F.2d 150 (6th Cir.1993). Thus, Gibson is entitled to summary judgment on Mills' state law discrimination claim.

## IV. CONCLUSION

**THEREFORE,** for the reasons set forth above and as stated at the hearing held in this matter on September 20, 1994, at which time the court entered an order, the court grants summary judgment to Gibson Greetings, Inc. on Mills' claims of sex discrimination under Title VII and KRS 344.010, *et seq.* A separate Judgment shall enter concurrently herewith.