Jeannette STEWART, Appellant,

v.

UNIVERSITY OF LOUISVILLE, Appellee.

No. 2000–CA–001726–MR.

Court of Appeals of Kentucky.

July 6, 2001.

Discretionary Review Denied Feb. 13, 2002.

---

6. Emphasis supplied.

Philip C. Kimball, Louisville, for Appellant.

Thomas M. Williams, J. Gregory Cornett, Louisville, for Appellee.

Before BUCKINGHAM and COMBS, Judges, and MARY COREY, Special Judge.[1]

## OPINION

BUCKINGHAM, Judge:

Jeannette Stewart appeals from a summary judgment entered by the Jefferson Circuit Court in favor of the University of Louisville. We affirm.

After a career in teaching and counseling, Stewart entered the graduate program in psychology at the University of Louisville at the age of forty-four. She was a recipient of a Regent's Fellowship that provided full tuition remission and a renewable yearly stipend of approximately $11,000. She was required to submit annual reports describing her progress and was not allowed to accept employment without obtaining permission from the university. Stewart received regular checks from the university while she was a fellow, and the university withheld all state and federal taxes, including FICA and medicare taxes, from the checks. She also received four checks for $50 each late in 1992 from the Bingham Child Guidance Clinic of the University of Louisville.

1. Senior Status Judge Mary Corey sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution.

The psychology department at the university provided written instructions to graduate students setting forth the required progress for a student to complete the graduate program, including requirements relating to a student's thesis. On December 22, 1992, the chairperson of the department wrote Stewart a letter indicating that she had made "little progress" toward her thesis proposal. On May 24, 1993, following the spring semester of Stewart's second year, the chairperson of the department again wrote a letter to Stewart. He advised Stewart that since she did not have her thesis proposal approved, she was not eligible for financial support through the department for the next year. On May 17, 1994, following the end of Stewart's third year, the acting chairperson of the department wrote Stewart a letter reminding her that she must have her thesis completed and approved by a committee by July 1, 1994, "or your fellowship will be rescinded." When Stewart did not meet this requirement, they rescinded her fellowship. However, she remained a part of the psychology department's graduate clinical program.

On March 15, 1995, Stewart faced a "Discovery Hearing" to review her progress on her thesis. On the following day, she was sent a letter from an associate professor of the department advising her that the clinical faculty had recommended that she be dismissed from the graduate clinical program. After Stewart was dismissed from the program and thereafter unsuccessfully filed a grievance, she filed a complaint against the university in the Jefferson Circuit Court.

In her lawsuit against the university, Stewart alleged sex and age discrimination in violation of KRS [2] Chapter 344, violation of KRS 61.102, failure to provide adequate supervision in violation of KRS 319.082(1)(*l*), discrimination and violation of the university handbook, illegal retaliation, and outrageous conduct. By an opinion and order entered on February 9, 2000, the trial court granted the university's summary judgment motion. The court held that Stewart had no cause of action for discrimination under KRS Chapter 344 because she was not an employee of the university and the statute is limited to the employer-employee relationship. The court further stated that even if Stewart were an employee, its ruling would "probably" be the same. When the trial court denied Stewart's motion to reconsider, this appeal followed.

Kentucky statutory law makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over...." KRS 344.040(1). An "employee" is defined for purposes of KRS Chapter 344 as "an individual employed by an employer...." KRS 344.030(5). KRS 61.102(1) provides that:

> No employer shall subject to reprisal, or directly or indirectly use, or threaten to use, any official authority or influence, in any manner whatsoever, which tends to discourage, restrain, depress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the Kentucky Legislative Ethics Commission, the Attorney General, the Auditor of Public Accounts, the General Assembly of the Commonwealth of Kentucky or any of its members or employees, the Legislative Research Commission or any of its committees, members or employees, the judiciary or any member or employee

2. Kentucky Revised Statutes.

of the judiciary, any law enforcement agency or its employees, or any other appropriate body or authority, any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety. No employer shall require any employee to give notice prior to making such a report, disclosure, or divulgence.

An "employee" is defined for purposes of KRS 61.102 as:

> [A] person in the service of the Commonwealth of Kentucky, or any of its political subdivisions, who is under contract of hire, express or implied, oral or written, where the Commonwealth, or any of its political subdivisions, has the power or right to control and direct the material details of work performance[.]

KRS 61.101(1).

The first issue is whether the trial court properly awarded the university summary judgment on Stewart's claims under KRS Chapter 344 and KRS Chapter 61. Because both statutes relate to prohibited actions by an employer against an employee, the specific issue is whether or not the court properly held as a matter of law that Stewart was not an employee of the university. As the trial court noted, "there is surprising lack of authority addressing whether a Fellowship/Scholarship student is an 'employee' of the university that student attends."

■ KRS Chapter 344 was modeled after Title VII of the Civil Rights Act of 1964, codified in 42 U.S.C. § 2000(e)(b). *Palmer v. International Ass'n of Machinists,* Ky., 882 S.W.2d 117, 119 (1994). In fact, the Kentucky discrimination statute is virtually identical to Title VII. *Mills v. Gibson Greetings, Inc.,* 872 F.Supp. 366, 371 (E.D.Ky.1994). Thus, Kentucky courts generally follow federal law in interpreting the Kentucky discrimination statute. *Id.*

■ Stewart maintains that her stipend supplied by the university constituted an employment relationship because she was required to perform duties above those expected of unassisted students. She further contends that the treatment of her stipend as wages for tax purposes by the university bolsters her alleged employment status.

■ In *Randolph v. Budget Rent–A–Car,* 97 F.3d 319 (9th Cir.1996), the federal court stated as follows:

> Scholarship sponsors often exercise a certain degree of control over the students who receive their scholarships, including terminating the scholarship if the student's grades fall below a designated level or if the student acts in derogation of other scholarship terms. However, imposition of scholarship conditions is far from the direction and supervision found in the traditional employment setting.

*Id.* at 326. In determining whether an individual will be deemed an "employee" for Title VII purposes, "one must examine the economic realities underlying the relationship between the individual and the so-called principal in an effort to determine whether that individual is likely to be susceptible to the discriminatory practices which the act was designed to eliminate." *Armbruster v. Quinn,* 711 F.2d 1332, 1340 (6th Cir.1983).

Applying these principles to the case *sub judice,* we conclude that the mere fact the university imposed conditions on Stewart's fellowship which required her to perform more duties than those expected of other students did not create an employer-em-

ployee relationship. Further, although the treatment of her stipend as wages for tax purposes was relevant, it was not dispositive of the issue. Also, although Stewart may have developed a therapist-patient relationship with one clinic patient, it is clear that nearly all of her duties and activities were in connection with her academic work rather than providing a service to the university. In short, we conclude that the economic realities of the relationship between Stewart and the university did not point to an employer-employee relationship. Thus, the trial court did not err in determining as a matter of law that Stewart was not an employee of the university. Therefore, the trial court properly dismissed her claims under KRS Chapter 344 and KRS Chapter 61.

■ Stewart's second argument is that the trial court's summary judgment should be vacated or reversed because it did not consider her amended complaint claims of negligent supervision in violation of KRS 319.082(1)(*l*), violation of handbook, illegal retaliation, and outrageous conduct. Our standard of review on appeal of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, Ky. App., 916 S.W.2d 779, 781 (1996). The ruling of the trial court is given no deference since factual findings are not at issue. *Id., citing Goldsmith v. Allied Bldg. Components, Inc.*, Ky., 833 S.W.2d 378, 381 (1992). Therefore, merely because the trial court did not specifically address all of Stewart's claims does not require this court to vacate the judgment and remand the matter to the trial court. Rather, we will review the claims and determine whether the trial court properly awarded summary judgment.

Stewart asserts in her third argument that the university is not entitled to assert the defense of sovereign immunity as to her claims under KRS Chapter 344 and KRS Chapter 61. *See Department of Corrections v. Furr*, Ky., 23 S.W.3d 615 (2000). Thus, we presume she concedes that the university may assert the defense of sovereign immunity as to her remaining claims. In fact, the university argues in its brief that it has sovereign immunity as to those claims, and Stewart does not maintain otherwise. Therefore, we conclude the trial court acted properly in dismissing the remaining claims even though it did not specifically address them in its opinion and order.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.