RENDERED: MAY 20, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0083-MR

ROBERT DEANE                                       APPELLANT

v.

APPEAL FROM WARREN CIRCUIT COURT
HONORABLE STEVE WILSON, JUDGE
ACTION NO. 17-CI-00544

WESTERN KENTUCKY UNIVERSITY;
BRIAN KUSTER; AND LEADERSHIP
STRATEGIES GROUP, INC.                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND LAMBERT, JUDGES.

CETRULO, JUDGE: Appellant Robert Deane ("Deane"), a former Western

Kentucky University police chief, appeals from a Warren Circuit Court order

dismissing all of Deane's claims and granting summary judgment in the Appellees'

favor. Deane alleges the Appellees created a hostile work environment, breached

an employment contract with him, acted negligently, disseminated or were complicit in the dissemination of defamatory statements, and tortiously interfered with his business relationships. For the reasons set forth below, we affirm the Warren Circuit Court.

## FACTS AND PROCEDURAL BACKGROUND

In late November 1999, then President of Western Kentucky University ("WKU"), Gary A. Ransdell, sent a letter of appointment to Deane offering him the position of chief of police of WKU and listed the terms of Deane's employment. The letter stated "[i]t will be appreciated if you will sign and return immediately to the President of [WKU] the enclosed copy of this letter, which will constitute your official acceptance of this appointment." Deane signed and returned the letter in December 1999.

In 2000, Deane began his tenure as the chief of police of the WKU Police Department ("WKUPD"). Throughout his time at WKU, Deane raised issues to the administration about lack of manpower, insufficient budget, and uncompetitive compensation within the WKUPD. In December 2015, Deane submitted his own critical needs assessment to Appellee Brian Kuster ("Kuster"), then WKU Vice President of Student Affairs and Deane's immediate supervisor. Deane outlined ongoing problems within the police department and repeated the above-mentioned concerns. In part, Deane requested take-home vehicles, more

competitive salaries, and updated facilities.  Also, Deane stated that the increase in special events that his officers worked had a negative effect on the officers' quality of life and raised concerns regarding the number of hours officers were required to work in a 24-hour period.  Deane stated that WKUPD "salaries are depressed to the degree that we are no longer able to recruit quality applicants or retain quality officers[.]"

In 2016, due to high turnover and low morale within the WKUPD, WKU (through Kuster) hired Appellee Leadership Strategies Group, Inc. ("LSG")[1] to do an overall assessment.  In March 2016, Kuster notified the WKUPD (including Deane) of LSG's upcoming assessment.  LSG was to provide recommendations on the "organizational health and structure" of the WKUPD.  In April and May 2016, LSG conducted confidential interviews with 45-50 former and current members of the WKUPD and members of law enforcement from the surrounding area.  On April 20, while the LSG assessment interviews were being conducted, Deane submitted notice of his retirement (effective December 2016) to Kuster.  Deane argues in his brief that he intended to retire at the end of 2020 (so as to reach his full retirement at 20 years with the WKUPD) but gave notice early

---

[1] LSG is represented here by Bill Waltrip and Randy Capps.  LSG is "a business which assesses organizations and provides them with solutions to improve their functionality."

because he "began to understand that [Kuster] was no longer interested in considering Deane's advice or opinion."

At the end of June 2016,[2] LSG released a preliminary finding, the "Executive Summary." This summary found low morale within the WKUPD, which was created, in part, by poor facilities, outdated equipment, and a lack of transparency. Additionally, the Executive Summary found a "need for a new direction[.]" The Executive Summary stated that several interviewees referred to the culture in the department as "toxic," and "the perception [within neighboring police departments] is that at the command level, other agencies do not respect WKU's PD leadership and cooperation is lacking." Several interviewees perceived the WKUPD to be "top heavy" and local police agencies had a perception that WKUPD was "in disarray."

Kuster shared this Executive Summary with Deane at the end of June. Kuster stated in an email to LSG[3] dated July 6, that he "spoke with [Deane] . . . to get him thinking about the needed cultural changes." Around the first or second week of July,[4] Deane notified Kuster that he was moving his retirement date

_____

[2] The Executive Summary in the record is not dated, but Kuster testified that he shared it with Deane on June 28, 2016. Deane does not refute that date in his brief.

[3] Specifically, to Bill Waltrip, part of LSG's leadership team.

[4] The memorandum (that Deane sent Kuster announcing his new retirement date) contained in the record is dated April 20, 2016, but all parties seem to agree that date was in error and the

-4-

forward from December to September 2016.  Deane expressed to Kuster that he was retiring for health reasons, but later testified at his July 31, 2017, deposition that he moved up his retirement because "things were progressively getting worse" and "oversight was getting worse and worse, and everything I did was questioned. Everything I told my troops to do, some of them got reversed and changed."

In mid-July 2016, LSG finished its evaluation and submitted its findings to WKU in an "Organizational Assessment."  The Organizational Assessment outlined several recommendations including updating equipment and facilities, suggestions for improving communication within the department and with neighboring police departments, and changes to scheduling and overtime. The Organizational Assessment recommended increased transparency and the creation of an advisory board "to provide insight and advice to the Chief of Police concerning issues of public safety."

On July 19, 2016, the Bowling Green Daily News ("Daily News") made an open records request to WKU for the Organizational Assessment.  WKU complied with the request, and on July 28, 2016, the Daily News printed a story based on that report.[5]  Deane released a statement, which was printed in part in the

---

document was produced around the first two weeks of July.  This memorandum does not give a reason for the new retirement date or refer to his health problems.

[5] Aaron Mudd and Wes Swietek, *Analysis: 'New Direction' Needed; Report on WKU Police Cites Low Morale, Staffing, Policies*, Bowling Green Daily News, July 28, 2016, at 1A and 6A.

Daily News article. The article summarized the Organizational Assessment's conclusions and recommendations, and quoted Kuster as stating that he knew the high turnover rate "was something more than salary." In the article, Deane was quoted as saying that the Organizational Assessment "contains many untruths, exaggerations and inaccuracies."

In May 2017, Deane filed a complaint in Warren Circuit Court against WKU, Kuster, and LSG alleging causes of action for hostile work environment, breach of contract, negligence, defamation, and tortious interference with business relations. The parties conducted almost three years of discovery and depositions. In May 2020, WKU and Kuster filed a motion for summary judgment, and in June 2020 LSG also filed a motion for summary judgment. Deane responded to both motions. In September 2020, the circuit court granted the summary judgments in favor of the Appellees WKU, Kuster, and LSG. Deane then filed a motion to alter, amend or vacate the order pursuant to CR[6] 59.05, which was denied. This appeal followed. Additional facts will be set forth below as necessary.

**STANDARD OF REVIEW**

Summary judgment is to be "cautiously applied and should not be used as a substitute for trial." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991). Summary judgment is appropriate "if the pleadings,

---

[6] Kentucky Rule of Civil Procedure.

-6-

depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists. *Steelvest*, 807 S.W.2d at 480. Said another way, summary judgment is improper if there exists any issue of material fact. This review requires the facts be viewed in the light most favorable to the party opposing summary judgment; here, in Deane's favor. *Id.* "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (citation omitted). Therefore, we operate under a *de novo* standard of review with no need to defer to the trial court's decision. *Id.*

To be clear, there is no appeal from the *denial* of a CR 59.05 motion. *Ford v. Ford*, 578 S.W.3d 356, 366 (Ky. App. 2019) (internal quotation marks and citations omitted) ("Orders denying CR 59.05 relief 'are interlocutory, *i.e.*, non-final and non-appealable and cannot be made so by including the finality recitations.'"). Here, simply because the circuit court included finality language in its order denying Deane's motion for CR 59.05 relief does not make that order appealable. In other words, the denial of a CR 59.05 motion does not alter the

summary judgment.  Deane's appeal is from the underlying judgment, not the denial of the CR 59.05 motion.  As stated, we review that summary judgment order *de novo*.

## ANALYSIS

On appeal, Deane argues that the record supports the finding that genuine issues of fact exist that preclude summary judgment, and therefore, the circuit court erred as a matter of law by granting summary judgment on all claims, in favor of the Appellees.  Although it is not always clear in the record which claim is against which Appellee, Deane challenges the summary judgment granted on his (1) hostile work environment claim, (2) breach of contract claim, (3) negligence claim, (4) defamation claim, and (5) tortious interference with business relations claim.  The Appellees argue that the record does not contain any genuine disputes of material fact, and they are entitled to judgment as a matter of law.  Each claim will be discussed in turn.

### I.      Hostile Work Environment

The Kentucky Supreme Court has emphasized that a hostile environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ammerman v. Bd. of Educ. of Nicholas Cty.*, 30 S.W.3d 793, 798

(Ky. 2000) (citing *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999)). Conduct must be sufficiently continuous and intensive in order to be considered hostile, not just solitary incidents. *Id.*

To establish a *prima facie* case of a racially hostile work environment, Deane "must demonstrate that (1) [he] belonged to a protected group,[7] (2) [he] was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the [Appellees] knew or should have known about the harassment and failed to act." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) (citation omitted). When evaluating the conduct within a possible hostile work environment, the Court should consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993). A hostile work environment is one that is both objectively hostile to a reasonable person and subjectively hostile to Deane. *Id.* Here, in the order granting summary judgment the circuit court determined that "[a]ssuming [Deane's] allegations are true, [he] has not shown that

---

[7] This element is not contested; Deane is an African American male over the age of 40.

-9-

he was subjected to a hostile work environment" because the conduct he described was "objectively mild, infrequent, and nonthreatening."

Deane argues that "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether – taken together – the reported incidents make out such a case." *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999) (quoting *Williams*, 187 F.3d at 562).[8]  Additionally, Deane argues that during discovery, a former WKU employee[9] stated during his deposition that Deborah Wilkins, an attorney for WKU and a senior advisor of the WKU President, is racist.  Deane points out that Kuster scrutinized his authority and questioned his decision-making.  Deane argues that he was deemed a "project" by superiors.  But even understanding that harassment can occur in subtle and discrete ways, these events are not enough to rise to a level as *sufficiently pervasive* as to create a hostile work environment as required by Kentucky law.  Deane does not show how, assuming the attorney was truly racist, she affected his work environment.  Deane does not establish how any harassment was based on his race, nor did he put WKU on notice of any harassment by reporting it to the WKU administration.

---

[8] Deane argues, and we agree, that Kentucky courts generally follow federal law in interpreting the Kentucky discrimination statute.  *Stewart v. Univ. of Louisville*, 65 S.W.3d 536, 539 (Ky. App. 2001) (citation omitted).

[9] Howard Bailey.

Deane does not show how he was treated differently than any other employee at WKU. Deane does not refer to any specific incidents where race played a role. Taking into account all the circumstances to which Deane refers, he does not provide adequate evidence to produce a genuine issue of material fact as to the elements purporting to show the existence of a hostile work environment. Therefore, we conclude summary judgment was appropriately granted on the hostile work environment claim.

## II.     Breach of Contract (Constructive Discharge)

Deane claims that his constructive discharge was a direct breach of his employment contract with WKU. Deane testified that although he retired in 2016, his intention had been to remain in his position as police chief until 2020.

A constructive discharge occurs when "based upon objective criteria, the conditions created by the employer's action[s] are so intolerable that a reasonable person would feel compelled to resign." *Brooks v. Lexington-Fayette Urban Cty. Housing Authority*, 132 S.W.3d 790, 807 (Ky. 2004) (citation omitted). "A finding of constructive discharge requires an inquiry into both the objective feelings of an employee, and the intent of the employer." *Id.* at 808 (citation omitted).

Deane claims "the record is brimming with evidence that a reasonable finder of fact could determine was sufficient to create an intolerable working

condition." However, our fact-cup does not runneth over. Deane claims he was forced into an early retirement because of the Organizational Assessment,[10] and on Kuster's increased scrutiny and micromanaging. Deane argues that he "began to understand that [Kuster] was no longer interested in considering [his] advice or opinions in early 2016." Subjectively, Deane may have felt resentful that his authority was being controverted and/or challenged; he may have felt frustrated that he was not being fully consulted by WKU administration; he may have even felt concerned about the pending release of the Organizational Assessment. However, objectively, Deane presented no evidence of intolerable actions on the part of the Appellees which would make a reasonable person feel compelled to resign.

Furthermore, Deane presents no evidence that the Appellees intended to force him into an early retirement. Deane did not show Kuster's scrutiny was egregious considering the existing budgetary restrictions, nor did he provide evidence that LSG had any intent of forcing him out of WKU. Deane did not prove conditions so intolerable that a reasonable person would feel compelled to

---

[10] The circuit court found that the Organizational Assessment could not have been a factor in the constructive discharge because Deane announced his retirement prior to the Organizational Assessment's release. Deane does not effectively counter that finding, nor does he argue the effects of the Executive Summary on his retirement decision.

resign. Therefore, viewing the record most favorably to Deane, we conclude summary judgment was appropriately granted on his constructive discharge claim.

## III. Negligence

The parties agree that LSG was hired to perform an assessment of the organizational health and structure of the WKUPD. LSG completed this task by interviewing between 45-50 current and former WKUPD officers and officers from local police departments. In his appellate brief,[11] Deane argues that:

> LSG breached its duty when it failed to undertake any efforts to corroborate what the interviewees were saying with WKUPD records that were easily attainable, had only LSG bothered to investigate. . . . Rather than act with reasonable care, LSG negligently accepted the complaints of the interviewees at face value, with no attempt to corroborate the complaints.

Deane mentions only one specific instance of a failure to corroborate: "in the [Organizational Assessment] it is stated that one of the interviewees had not had a vacation in years, however Deane speculates . . . that this interviewee was actually saving vacation days to build up for retirement." LSG argues that it was not negligent in its preparation of the Organizational Assessment; LSG "completed the [Organizational Assessment] within the scope of the work requested" which was "detailed and professional[.]"

---

[11] In his appellate brief, Deane argues only LSG acted negligently; therefore, we need not discuss any alleged negligence as it relates to the other Appellees.

As in any negligence claim, Deane must prove (1) the existence of a duty, (2) breach of that duty, (3) causation between the breach of duty and his injury, and (4) damages. *Howard v. Spradlin*, 562 S.W.3d 281, 286 (Ky. App. 2018) (quoting *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016)).

The court's "first inquiry must always involve the legal question of the existence of a duty." *Pearson v. Pearson*, 552 S.W.3d 511, 514 (Ky. App. 2018). Deane argues that "LSG voluntarily agreed to assess 'departmental structure, morale issues, training and pay' of the WKUPD[,]" and thereby created their own duty to Deane. Deane argues that a duty existed because "[a] duty voluntarily assumed cannot be carelessly undertaken without incurring liability therefore."[12] However, more accurately, "[a] duty voluntarily assumed cannot be carelessly *abandoned* without incurring liability for injury resulting from the abandonment." *Louisville Cooperage Co.*, 230 S.W.2d at 105 (emphasis added) (citation omitted). More specifically, *Louisville Cooperage Company* applied the doctrine of assumed duty in a case of property damage, where the duty was assumed pursuant to an express contract. We do not find *Louisville Cooperage Company* persuasive because (1) *Louisville Cooperage Company* discusses an express contract but, here, Deane did not have an express contract with LSG; and

---

[12] Deane cites to *Louisville Cooperage Co. v. Lawrence*, 230 S.W.2d 103, 105 (Ky. 1950), but misquotes the Court.

(2) *Louisville Cooperage Company* deals with the abandonment of an agreed upon duty to act but, here, Deane argues that LSG had an implied duty to act reasonably.

Kentucky does recognize a general universal duty of care, but that duty is not "boundless." *Johnson v. United Parcel Serv., Inc.*, 326 S.W.3d 812, 815 (Ky. App. 2010). *See also Bramlett v. Ryan*, 635 S.W.3d 831, 839 (Ky. 2021). The Kentucky Supreme Court "has not interpreted the term 'universal' in a literal sense but instead has applied this duty in situations dictated by public policy, statutory and common law, and foreseeability." *Bramlett*, 635 S.W.3d at 839. As it relates here, Kentucky recognizes a general duty to exercise care to prevent *foreseeable injuries. Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003) (emphasis added) (citation omitted). "The most important factor in determining **whether a duty exists** is *foreseeability*." *Id.* (emphasis added) (citation omitted). Stated another way, if the injuries had not been foreseeable, there was no duty. Here, no duty existed for an obvious reason: Deane announced his retirement (April and early July 2016) *before* the release of the Organizational Assessment (mid-July 2016). Forcing Deane's retirement could not have been a *foreseeable injury* of LSG's release of the Organizational Assessment. Therefore, LSG owed no legally cognizable duty to Deane.

In addition, we would be remiss not to address the lack of causation as well. "Generally, the issues of the standard of care and the existence of a duty

are legal questions; whereas, the breach of a duty and causation are factual issues. However, where only one reasonable conclusion can be reached, a court may decide the issue of causation as a matter of law." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 438 (Ky. App. 2001) (internal quotation marks and citations omitted). Plainly stated, the only reasonable conclusion that can be reached is that Deane did not prove causation; *i.e.*, LSG's release of the Organizational Assessment to WKU did not cause Deane to retire for the same reasons stated above: Deane announced his retirement prior to the Organizational Assessment's release to WKU. Although Deane argued that he did not *want* to retire until 2020, he however announced his retirement not once, but twice,[13] prior to the Organization Assessment's release to WKU. Therefore, we conclude summary judgment was appropriately granted on the negligence claim.

## IV. Defamation

Deane argues that LSG published the "untrue and unfair" Organizational Assessment to WKU.[14] WKU and Kuster argue that "the

---

[13] In April 2016, he formally announced his retirement effective December 2016. Then, in early July 2016, he effectively announced it a second time when he moved his retirement date.

[14] Frequently in the record, the trial court and Appellees refer to the Organizational Assessment as being "published" by WKU through the Daily News. However, on appeal, Deane limits the conversation of "publishing" to LSG, specifically, LSG's publication of the Organizational Assessment to WKU. "Publication" is a term of art, and defamatory language is "published" when it is intentionally or negligently communicated to someone other than the party defamed. *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (internal quotation marks and citation omitted). While the Kentucky Supreme Court in *Toler* casts some doubt as to whether

-16-

statements Deane complains about are opinions and cannot form the basis of a defamation claim." LSG agrees, arguing that Deane's defamation claim fails because the alleged defamatory statements are either opinion or true.

Defamation is, generally, "the injury to the reputation of a person in public esteem." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004), *overruled on other grounds by Toler*, 458 S.W.3d 276 (internal quotation marks and citation omitted). To prevail on a claim for defamation, Deane must prove: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler*, 458 S.W.3d at 282 (footnotes omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 558 (1977)). Our first inquiry is not whether the statements in the Organizational Assessment were fact or opinion, but rather whether the alleged defamatory statements are provable as false. *Cromity v.*

---

"publication" should apply when the "publishing" was within a company and its agents, the Court decided further clarity on the issue could "wait for another day." *Id*. From our research, another day has yet to come. Here, LSG releasing the Organizational Assessment to WKU fits the strict definition of "publication." We are not inclined to address the matter more because further discussion is (1) unnecessary for our analysis, and (2) publication by LSG has not been strongly challenged by the parties. Accordingly, we limit our analysis to the argument presented on appeal; *i.e.*, LSG's publication of the Organizational Assessment to WKU, and not the publication in the Daily News.

-17-

*Meiners*, 494 S.W.3d 499, 503 (Ky. App. 2015) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1 (1990)).

Deane states that the "[deposition] testimony of [himself and two WKUPD officers] all set forth aspects of the [Organizational Assessment] that they believe are untrue and unfair." However, Deane only cites to one specific defamatory statement: a disagreement about the WKUPD being "top heavy," and he does not prove that statement's falsity. It is unclear if more untrue and/or unfair statements are present within those depositions. It is not our role to scour hundreds of pages of depositions, discovery and motions to find specific "untrue and unfair" statements.[15] But, in keeping with our intention to view the record in light most favorable to Deane, we have attempted to find additional support for his argument. Within another claim discussion (as noted above), Deane refers to a vacation day misrepresentation in the Organizational Assessment, but, again, he does not prove the statement to be false. Deane disagreed with the Organizational Assessment statements about whether or not the WKUPD had a good working relationship with other area police departments, but then later during his deposition admitted that if the other departments had a negative impression of his department "they [n]ever

---

[15] *See Young v. Newsome*, 462 S.W.2d 908, 910 (Ky. 1971) (citation omitted); *Sharp v. Sharp*, 491 S.W.2d 639, 644-45 (Ky. 1973) (citation omitted).

told me that." A disagreement about impressions of working relationships is not provable as false, and therefore not defamatory.

For comparison, we turn to *Cromity*, 494 S.W.3d 499, where a radio program host made derogatory statements during a radio broadcast about a police officer who had recently cited him for speeding. During the broadcast, the host called the officer an "out and out liar," a "troubled public servant," and "delusional." *Id*. at 501. Thereafter, the officer brought a defamation claim against the radio host and station operator. The circuit court awarded summary judgment to the radio host and station operator, dismissing the claims; on appeal, this Court affirmed, stating "[d]isparaging statements that are not so definite or precise as to be branded false[] cannot support an action for defamation." *Id*. at 504 (citing *Welch v. Am. Publ'g Co. of Ky.*, 3 S.W.3d 724, 730 (Ky. 1999)) (internal quotation marks omitted).

Because the statements Deane challenged in the Organizational Assessment were not so definite or precise as to be branded false, we do not reach the issue of actionability. Further, we need not address the parties' privilege and immunity arguments because Deane clearly failed to prove the first element of defamation. Therefore, we conclude summary judgment was appropriately granted on the defamation claim.

## V.     Tortious Interference with Contract (Business) Relations

Deane claims that LSG intentionally interfered with his employment contract with WKU.  He argues that "as a result of the hostile work environment that was exacerbated following LSG's [Organizational Assessment], Deane knew the writing was on the wall, and decided to expedite his plans for retirement."

A tortious interference with contract claim requires Deane show:  (1) the existence of an employment contract with WKU; (2) LSG's knowledge of the contract; (3) that LSG intended to cause a breach of that contract; (4) that LSG's actions did indeed cause a breach; (5) that damages resulted to Deane and (6) that LSG had no privilege or justification to excuse its conduct.  *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. App. 2012) (citing *Ventas, Inc. v. Health Care Prop. Invs., Inc.*, 635 F. Supp. 2d 612, 619 (W.D. Ky. 2009)).

The first element is easily met as the Kentucky Supreme Court has held signed letters of intent, as signed by Deane, constitute a valid offer and acceptance under Kentucky employment contract law.  *Britt v. Univ. of Louisville*, 628 S.W.3d 1, 5-6 (Ky. 2021).  Even assuming, without conceding, that Deane could prove that LSG had knowledge of the contract between WKU and Deane, and the intent to breach that contract, Deane has, yet again, not shown evidence to prove causation.  As previously stated, Deane was unable to present any evidence that LSG's release of the Organizational Assessment caused Deane to retire.

Therefore, we conclude the circuit court accurately determined that, as a matter of law, Deane could not succeed on this claim and summary judgment was appropriately granted.

## CONCLUSION

For the foregoing reasons, we AFFIRM the Warren Circuit Court's order granting the Appellees' motions for summary judgment.


ALL CONCUR.


BRIEFS FOR APPELLANT:

David F. Broderick
Brandon T. Murley
Bowling Green, Kentucky

BRIEF FOR APPELLEES
WESTERN KENTUCKY
UNIVERSITY AND BRIAN
KUSTER:

Thomas N. Kerrick
Ena V. Demir
Bowling Green, Kentucky


BRIEF FOR APPELLEE
LEADERSHIP STRATEGIES
GROUP, INC.:

Frank Hampton Moore, Jr.
Frank Hampton Moore, III
Bowling Green, Kentucky